JOHN E. MULLEN, as Administrator of the Estate of BARTLEY J. E. MULLEN, Deceased, v. SCHENECTADY RAILWAY COMPANY, Respondent.

Railroads — negligence — when question whether running a suburban electric railway car at speed of forty-five or fifty miles an hour constitutes negligence is question for jury — contributory negligence of plaintiff's intestate — when question of fact for jury.

1. Plaintiff's intestate was killed in crossing the track of an electric railroad, which was located in a much-traveled public highway, with an improved roadway on one side and an unimproved road-

way on the other and with crossings only a short distance apart, both for an intersecting highway and private houses. Though not a city street, it was the ordinary suburban road in a thickly-settled neighborhood. *Held,* upon the facts as they appear in this case, that in view of the combination of conditions shown to exist, it was peculiarly within the province of a jury to say whether the defendant was negligent in running its car at a speed of forty-five or fifty miles an hour at a place in a public highway where there was so much danger of colliding with persons lawfully attempting to cross the tracks.

2. Ordinarily, if a person attempts to cross a railroad track after satisfying himself by the exercise of ordinary care that it is a prudent thing to do, he cannot be charged with contributory negligence as matter of law for not again looking in a particular direction. In view of information which deceased had received as to the time when the car would pass, of his purpose in attempting to cross the tracks to take that car, of the distance of the car away when he made that attempt and of its speed, it cannot be held as matter of law that he was guilty of contributory negligence or that the plaintiff's case was utterly devoid of evidence to show that decedent exercised any care.

*Mullen* v. *Schenectady Ry. Co.*, 159 App. Div. 928, reversed.

(Argued February 3, 1915; decided February 25, 1915.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered February 3, 1914, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*John A. Delehanty* for appellant. It was the duty of the defendant and its motorman to have the car under such control when approaching the crossing at the intersection of highways at stop 25 that the car could be stopped if any emergency required it, and failure to perform that duty constituted actionable negligence. (*Lawson* v. *Met. St. Ry. Co.*, 40 App. Div. 307; *Huther* v. *Nassau El. R. R. Co.*, 142 App. Div. 522; *Hergert* v.

*Union Ry. Co.,* 25 App. Div. 218; *Kennedy* v. *T. A. R. R. Co.,* 31 App. Div. 30; *Hoyt* v. *M. S. Ry. Co.,* 73 App. Div. 250; *Crantz* v. *Nassau El. R. R. Co.,* 154 App. Div. 247; *Dunican* v. *Union Ry. Co.,* 39 App. Div. 497; *Swift* v. *S. I. R. T. R. R. Co.,* 123 App. Div. 645; *Kozlowski* v. *Rochester, S. & E. R. R. Co.,* 142 App. Div. 242; *Orafina* v. *N. Y. S. Railways,* 148 App. Div. 417.) Plaintiff's intestate was free from contributory negligence. (*Harrison* v. *N. Y. C. & H. R. R. R. Co.,* 195 N. Y. 86; *Braun* v. *B. G. E. Co.,* 200 N. Y. 484; *Zucker* v. *Whitridge,* 143 App. 191; *Smith* v. *N. Y. C. & H. R. R. R. Co.,* 177 N. Y. 224; *Dunican* v. *Union Ry. Co.,* 39 App. Div. 497; *Mapes* v. *Union Ry. Co.,* 56 App. Div. 508; *Cranch* v. *B. H. R. R. Co.,* 186 N. Y. 310; *Johnson* v. *R. Ry. Co.,* 61 App. Div. 12; *Buhrens* v. *D. D. R. R. R. Co.,* 53 Hun, 571; *Brozek* v. *S. Ry. Co.,* 10 App. Div. 360; *Legare* v. *Union Ry. Co.,* 61 App. Div. 202; *Payne* v. *Binghamton Ry. Co.,* 156 App. Div. 1.)

*Daniel Naylon, Jr.,* for respondent. The evidence is insufficient in law to sustain a finding that the plaintiff was free from contributory negligence. (*Baxter* v. *A. & S. El. R. R. Co.,* 190 N. Y. 439; *Peterson* v. *Ballantine & Sons,* 205 N. Y. 29; *Wiwirowski* v. *L. S. & M. S. Ry. Co.,* 124 N. Y. 420; *Thompson* v. *M. S. Ry. Co.,* 89 App. Div. 13; *Hoyt* v. *M. S. Ry. Co.,* 73 App. Div. 249; *Lynch* v. *T. A. R. R. Co.,* 88 App. Div. 604.) The evidence is insufficient in law to sustain a finding that defendant was negligent. (*Schmedding* v. *N. Y. & Q. C. Ry. Co.,* 85 App. Div. 24; *Henavie* v. *N. Y. C. & H. R. R. R. Co.,* 10 App. Div. 67.)

MILLER, J. This is an action for negligently causing the death of the plaintiff's intestate on the 13th day of June, 1912. A nonsuit having been granted, a brief recital of the essential facts is necessary to present the law points.

The defendant is a street surface railroad corporation operating a double-track electric road between Albany and Schenectady upon the public highway known as the Albany and Schenectady turnpike, which runs substantially east and west. It ran two classes of cars, limited cars making no stops between said cities, and local cars which stopped on signal at regular places designated by numbers. The accident happened at stop 25 which is just west of the intersection of the turnpike and a much-traveled public highway running into it from the south. The continuation of this highway to the north of the turnpike is a private road. In the southwest corner formed by the intersection of the two highways is a hotel. There are six or seven dwelling houses quite close together immediately west of the hotel, and a house on the opposite corner east of the hotel. The improved part of the turnpike is north of the tracks and there is a ditch or gutter between the improved part and the tracks. It is five feet between the two tracks and the rails of each track. Along the south side of the tracks is an unimproved roadway twenty feet wide used for the most part for ingress and egress to and from the houses on the south side of the highway, for which wooden crossings across the defendant's tracks were provided. The piazza of the hotel is twenty feet from the south rail. There was a stake between the tracks and twelve feet west of the line of the east side of the hotel piazza to mark the place where the west end of a west-bound local car stopped at stop 25 to discharge or receive passengers. Between one and two o'clock in the afternoon of June 13th, 1912, a clear bright day, the deceased visited said hotel on business as he had been accustomed to do for several years, and after transacting his business inquired of the proprietor when the next car passed for Schenectady, and was told "in about ten minutes." He and the proprietor then walked out on to the piazza, and the latter returned into the house leaving him sitting in a chair. A few minutes

later the proprietor saw him lying, bleeding and unconscious, in the gutter north of the north track of the defendant's road. A limited west-bound car had just passed on the north track and had been brought to a stop about 150 feet west of the point where the deceased was hit. The whistle of the car was blown about five or six hundred feet east of the highway crossing or intersection, the air brakes were applied about two hundred feet east of that point and the car was reversed about fifty feet before the collision. The car was running forty-five to fifty miles an hour. The road was level and straight with an unobstructed view of more than 1,500 feet in both directions from stop 25. When the car was about fifty feet from the deceased the conductor, standing just inside the door at the rear of the car and looking through the middle front window, saw the deceased going north apparently in the middle of the west-bound track.

Apparently the motorman appreciated the danger of hitting the deceased when the car was about 250 feet away, but owing to the speed of the car he was unable to stop it in time. The question on this branch of the case is whether it was permissible for a jury to find that the defendant was negligent in running its car at a speed of forty-five to fifty miles an hour at the place of the accident. It would plainly be negligence to run a car at that rate of speed in a city street. It might not be negligence to do that along the side and out of the traveled part of a rural highway in a sparsely settled community. This case falls between the two extremes. It is not the case of a railroad operated on its own right of way, where negligence cannot be predicated on speed alone. The railroad was in a much-traveled public highway with an improved roadway on one side and an unimproved roadway on the other and with crossings only a short distance apart both for an intersecting highway and private houses. Though not a city street it was the ordinary suburban road in a thickly settled neighbor-

hood. The defendant was bound to run its cars with due regard for the safety of others having equal rights in the public highway, and the degree of care to be exercised was, as in all cases, to be measured by the dangers to be apprehended. The defendant had the right of way, not because of any superior right in the street, but solely because of the physical fact that its cars have to run on rails. There was the possibility that persons would be attempting to cross the defendant's tracks to or from the intersecting highway, the hotel or the private houses in the vicinity, and the additional possibility that persons might be attempting to cross the tracks to take a position at the stopping place where they could board a car. Without attempting to lay down any general rule, but confining the decision strictly to the facts of the case, we are of the opinion that in view of the combination of conditions shown to exist it was peculiarly within the province of a jury to say whether the defendant was negligent in running its car at a speed of forty-five or fifty miles an hour at a place in a public highway where there was so much danger of colliding with persons lawfully attempting to cross the tracks.

The question of the intestate's freedom from contributory negligence is one of greater difficulty, though less evidence is required than would be if he were alive and able to testify. (*Harrison* v. *N. Y. C. & H. R. R. R. Co.*, 195 N. Y. 86; *Braun* v. *Buffalo General Electric Co.*, 200 N. Y. 484.) The rule so long relaxed by the courts in death cases has, since the accident and since the trial of this action, been changed by statute and the burden imposed on the defendant in such cases. (Code of Civil Procedure, section 841-b.) It is reasonably plain that the deceased was attempting to cross the tracks to gain a position where he could board the car and he must have been hit just as he was clearing the track. It is to be inferred that he knew the car was coming. In all probability he heard its approach before he left the hotel piazza. He

20

had been informed a few minutes earlier that the next car for Schenectady would be along in ten minutes, and it is plainly to be inferred from his actions, viewed in the light of that information, that he supposed the approaching car was a local and would stop.   He had to cross ahead of the car to reach the point where he could board it.   Apparently he walked from the hotel piazza directly across the tracks toward the point opposite the stake which marked the stopping place.   He could not judge how fast the car was approaching when he started to cross the tracks.   If, as we have the right to assume, he supposed it was a local car, he had ample time to cross in safety.   If he had hurried his steps, he probably had time as it was.   There is, of course, no evidence that he looked, but the evidence tends to indicate that he did not look in the direction of the car after he started to cross the tracks.   Was he bound as matter of law to do so?   That depends on whether he had a right to suppose from the information which he had received that the car was a local and to rely on that supposition without taking · extra care to guard against accident in case it was wrong.   We do not think that question should be decided as one of law.   Travelers commonly act upon like information.   Extreme care even after the deceased was upon the tracks would probably have avoided the accident, but the law does not exact extreme or unusual care.   Ordinarily, if a person attempts to cross a railroad track after satisfying himself by the exercise of ordinary care that it is a prudent thing to do, he cannot be charged with contributory negligence as matter of law for not again looking in a particular direction.   If the deceased looked just before he attempted to cross the west-bound track, when the car must have been over two hundred feet away, he might well have supposed that he incurred no risk in crossing.   The plaintiff, therefore, is not to be defeated because the evidence fails to disclose whether or not he looked at that precise point.   In view of the information which he had received,

of his evident purpose in attempting to cross the tracks, of the distance of the car away when he made that attempt and of its speed, we do not think it can be held as matter of law that he was guilty of contributory negligence or that the plaintiff's case was utterly devoid of evidence to show that he exercised any care.

The judgment should be reversed and a new trial granted, with costs to abide the event.

CHASE, J. (dissenting). Even at the high rate of speed at which the car was going before the air brakes were applied, it was not more than fifteen times the ordinary speed at which a person walks. When the motorman first applied his air brakes, the intestate must have been upon or near the tracks and his conduct must have been such as to indicate that there was danger of his being hit. While the car was going two hundred feet at a speed which was being continually reduced by the efforts to stop it, the intestate had ample time to get off the tracks if he was on them — to refrain from going thereon if he was not yet on them — or of crossing them if but a few feet distant away. It does not appear just what the intestate did. The record does not disclose any facts from which it can be inferred that the intestate exercised any care whatever at the time and place of the accident.

WILLARD BARTLETT, Ch. J., HISCOCK, CUDDEBACK, HOGAN and SEABURY, JJ., concur with MILLER, J.; CHASE, J., reads dissenting memorandum.

Judgment reversed, etc.