Before STATE INDUSTRIAL COMMISSION, Respondent.

In the Matter of the Claim of ELIZABETH O'SULLIVAN, Respondent, for Compensation under the Workmen's Compensation Law for the Death of Her Husband, FLORENCE O'SULLIVAN, v. A. H. WOODS THEATRE COMPANY, Employer, and UNITED STATES FIDELITY AND GUARANTY COMPANY, Insurance Carrier, Appellants.

Third Department, March 2, 1921.

Workmen's Compensation Law — accidental injury or death — absence of eye witness — statements of employee found in dying condition confirmed by physical facts — hemiplegia — when hospital records not evidence of treatment for — nature of evidence in death cases.

Where a watchman, employed by a theatre company and found in the theatre on Sunday ·morning in a dying condition with an abrasion on his head, stated that he had just fallen from the stage, and it appeared that when he entered the theatre a few hours before he was in good condition; that the front of the stage had been freshly shellacked; that after the alleged fall the footlights were found to be broken near where a little ladder came to the stage, and the first two chairs below the stage were broken, tipped back and pulled from the concrete floor, the statements of the dying man confirmed by physical facts justified a finding that death resulted from the accident.

In such case hospital records showing that deceased was treated for hemiplegia are insufficient to prove that probably deceased's injury was due to a similar attack, where the hospital authorities could not give any satisfactory account as to how the records were made, but stated that they were made up from information acquired almost any way and from what they were told.

In death cases the same quality of evidence as to the conduct of the deceased is not required as in a case where he is alive and can take the stand.

APPEAL by the defendants, A. H. Woods Theatre Company and another, from an award of the State Industrial Commission, entered in the office of said Commission on the 6th day of October, 1919, and also from a decision and award of said Commission made on the 4th day of June, 1920.

*William Warren Dimmick*, for the appellants.

*Charles D. Newton*, Attorney-General [*E. C. Aiken*, Deputy Attorney-General, of counsel], for the respondents.

JOHN M. KELLOGG, P. J.:

The employer maintained and cared for the theatre building in which the accident occurred. The entertainments at the theatre were staged principally by its president, A. H. Woods, upon his own account, he giving to the theatre company fifty per cent of the gross receipts of each entertainment, the latter to maintain the building, heat, light and clean it and furnish the ushers, doorkeepers, ticket sellers and attendants. The deceased employee was employed by the theatre company, the appellant, as a stage doorman, and on Sundays he acted as watchman. His hours were from seven A. M. to seven P. M., and he sustained his injuries Sunday morning while performing his duties. We need not seriously consider the liability of the appellant for death benefits if the death resulted from an accident.

Sunday morning the decedent O'Sullivan went upon duty as the night watchman, Cassidy, left. They had a chat and O'Sullivan was then in good condition. About eight-thirty or eight-thirty-five A. M. two employees went to the theatre, rapped at the door and got no answer. Upon looking through the glass they saw O'Sullivan dragging himself along the floor towards the door. He attempted to get up enough to unlock the door, but fell back. They forced the door and picked him up. He said: "I will be all right, just a little upset and nervous; I fell off the stage and had to crawl all the way out here and all upset and nervous." O'Sullivan's face was scratched and one of the employees got some water and washed the blood off of his face. Some blood fell upon his shirt and vest and there was a mark on his face where the skin had been broken and an abrasion — the widow called it a hole in the head — which had been bleeding, and the blood

had dried. He complained of his arm and thought it was broken, and when they moved it for him it hurt him. He was entirely rational and was anxious that they should not alarm his wife. He was fifty-seven years of age, in good health, with a little hitch or limp in his walk at times, and of good habits. He had not lost a day's work in years.

When the night watchman left the theatre, as O'Sullivan entered it, it was in good condition; the footlights were unbroken and the seats in front of the stage were in their usual condition. The theatre was ready for rehearsal that morning and a metal piece had been placed on some chairs immediately in front of the stage. The stage was about three feet above the orchestra floor, and on the front of the stage was an apron of wood which was freshly shellacked several times a week. There is concrete at the edge of the stage, near the footlights, which is shellacked every day. The floor was slippery. Actors used resin on their shoes to avoid slipping. At the edge of the stage there is a slope of the floor where it goes into the footlights, the drop or depression there being called the pan. O'Sullivan changed his clothes at top room No. 2, and in order to reach this room it was necessary for him to cross the stage. When found he had on the shoes he wore in the theatre; his street shoes were in the top room. It is evident, therefore, he had been across the stage into top room No. 2 and had to pass at least partly across the stage. After O'Sullivan was found it was discovered that several of the footlights were broken near a place where a little ladder came to the stage, and the first two chairs below the stage, at the left side, were broken, tipped back and partly pulled from the concrete floor into which they were screwed, and the metal piece was not as it was left upon the chairs, but was tipped over and leaning against the chairs in the aisle. There is no way in which this disordered condition of the footlights and these chairs and the metal piece could have occurred aside from accounting for it as O'Sullivan stated. The Commission had the right to feel that after changing his shoes in the top room, he came out across the stage to descend the little ladder and slipped upon the slippery floor or in the depression, breaking the lights and the seats and disarranging the metal piece. A man falling from the stage near the

ladder, at a place where the footlights were found broken, would naturally fall at the place where the seats were broken and the metal piece disarranged. Some accident must have happened at that place after the night watchman left. No suggestion is made of any other manner in which the damage could have occurred to the property at that time. We cannot say there is no evidence to justify the award; in fact it seems to rest comfortably upon the evidence. In death cases the same quality of evidence as to the conduct of the deceased is not required as in a case where he is alive and can take the stand. It is assumed that if he could speak he would give a reasonably satisfactory account of himself as to matters which might not otherwise be understood. (*Graffe* v. *Art Color Printing Co.*, 191 App. Div. 669; *Mullen* v. *Schenectady R. Co.*, 214 N. Y. 300, 305; *Harrison* v. *N. Y. C. & H. R. R. Co.*, 195 id. 86, 89; *Braun* v. *Buffalo General Electric Co.*, 200 id. 484, 496 and cases cited.) But here we have his speech, and it is fully confirmed by the condition of the stage, the seats and the metal piece. His normal mental condition when discovered, the story he told and the condition at and near the stage, justified the finding of the Commission that he fell from the stage and received his injuries. The conclusion that the death resulted from the accident fairly rests upon the evidence.

It is said that a hospital record shows that a month before the accident O'Sullivan was treated there for hemiplegia and that probably his injury came from a similar attack. The parties who made the record at the hospital can give no satisfactory account of it, but state that they make it up from information which they acquire in almost any way and from what they are told. The wife, and his co-employees, if believed, make it impossible that O'Sullivan could have been treated at the hospital at the time stated. Whether he was at his work every day was a matter of easy proof; his co-employees and the wife testify to the fact. If this was not true it was easy for the employer to prove the time he had lost. We cannot review the determination of the Commission as to the facts if there are any facts tending to sustain it. The award should be affirmed.

Award unanimously affirmed.