CHARLES L. WALSH and Another, as Administrators, etc., of RICHARD WALSH, Deceased, Appellants, v. NEW YORK, ONTARIO AND WESTERN RAILWAY COMPANY, Respondent.

Third Department, May 4, 1927.

Railroads — action for death of plaintiffs' intestate — accident occurred in winter time shortly after heavy snow storm — intestate, who was at hotel on opposite side of track from station, knew that train was approaching, crossed immediately in front of it, turned along track inside bank of snow and was struck when he had traveled about two feet along track— intestate was guilty of contributory negligence — court properly set aside verdict in favor of plaintiffs and dismissed complaint.

Plaintiffs' intestate was struck by one of defendant's trains and killed near a railroad station. The court properly set aside a verdict in favor of the plaintiffs and dismissed the complaint, since the evidence shows that intestate was guilty of contributory negligence. It appears that the intestate was at a hotel which was located across the track from the station; that the whistle on the train was heard by the people in the hotel and by the intestate; that he immediately left the hotel and hurried across the tracks; that a few days before the accident a heavy snow storm had occurred and the defendant's servants had shovelled the snow from the tracks making

piles parallel to the tracks which were about six feet long and four feet, three inches, from the outer rails; that intestate, who apparently thought the approaching train was a local one, although in fact it was a through train, succeeded in crossing the tracks but immediately turned and walked parallel with the track on which the train was approaching and between it and one of the snow banks and was struck after he had proceeded about two or three feet; that the space between the overhang of the engine and the snow bank was less than two feet; and that the intestate showed by his actions at the time that he was aware of the fact that the locomotive would pass very close to him. DAVIS, J., dissents, with opinion.

APPEAL by the plaintiffs, Charles L. Walsh and another, from an order of the Supreme Court, made at the Sullivan Trial Term and entered in the office of the clerk of the county of Sullivan on the 10th day of May, 1926, setting aside the verdict of a jury in favor of the plaintiffs for $3,500, and dismissing the complaint, and also from a judgment entered in said clerk's office on the 12th day of May, 1926, pursuant to said order.

*John D. Lyons* [*Nellie Childs Smith* of counsel], for the appellants.

*Watts, Oakes & Bright* [*Elbert N. Oakes* of counsel], for the respondent.

McCANN, J. On a clear day in the forenoon of February 1, 1925, plaintiffs' intestate was killed by a locomotive of a north-bound train of the defendant as it passed by the station at Roscoe, Sullivan county, N. Y. At the point of the accident there were three tracks extending north and south. A highway crossed these tracks at right angles just north of the railroad station. The most westerly of the three tracks was a siding; the next toward the east was the south-bound main track and the next farther toward the east was the north-bound main track. West of the tracks and north of the highway was a hotel known as the " Roscoe House " and also as " Keener's Hotel." Decedent had been a guest at this hotel and was about to leave when the whistle of No. 9 north-bound train was heard by the people in the lobby of the hotel and the fact that a train was coming was referred to by persons there, in the presence of the decedent, who picked up his bag and started out of the hotel door. Witnesses saw him " hurry " or " trot " across the tracks, *i. e.*, the siding, the south-bound and the north-bound track, and he had just cleared the north-bound track and turned to the right to go to the railroad station when he was struck by the locomotive coming from the south and his body was thrown some distance. The testimony shows he had proceeded about two feet south of the walk toward the station when struck. His footprints showed in the snow at that point. A day or two before the accident a large quantity of snow had fallen and the railroad company, in order to clear its

tracks, had thrown the snow back from the rails and piled it in certain places. One of these piles was on the east side of the track and was banked up to a height of about five feet and was six or eight feet long. It was at a point just south of where the decedent turned to go to the station on the east side of the track and plaintiffs' witness testified that on the afternoon of the day of the accident, the face of the bank of said pile of snow was four feet and three inches from the east rail of the north-bound track. The condition existing, therefore, formed an alleyway or passageway through which one could get to the station traveling southerly along the north-bound rail and with said snow bank on the left. The distance through this alleyway or passageway was, as above stated, about six or eight feet. The snow was not shoveled clear to the ground but the areaway between the highway and the station was covered with loose gravel or cracked stone and the bottom of the passageway, so called, was shoveled so that there remained not more than a couple of inches of snow thereon. It was the creation of this condition and the maintenance of the snow bank in this position and the speed of the train which is the negligence charged against the defendant. Such speed was variously estimated as being between thirty-five and fifty-five miles per hour. The trial justice did not send the case to the jury upon the ordinary charge in a railroad crossing case, but on the contrary, charged that the defendant had complied with all the duties required by law in giving warning of its approach to the said crossing. The question, therefore, under the pleadings and under the charge of the court is whether or not the defendant was guilty of the negligence charged as stated above, and furthermore as to whether the decedent was guilty of contributory negligence in trying to pass through this passageway, taking into consideration the width of it and the fact that the train was fast approaching.

It cannot be questioned that the facts positively establish that the decedent knew that this train was coming; in fact, he knew it before he left the hotel. That is the reason he left the hotel at that time. He hurried across ahead of this train expecting to take it and thinking that it was his train. It developed, however, that it was train No. 9 which was running approximately on the time of train No. 11 and was not scheduled to stop. Train No. 11, however, was due to make such stop. As decedent left the hotel he could easily see to the south along this track one-quarter to one-half of a mile. He crossed the track in front of the oncoming train and he could at all times, from the time he left the hotel porch until he was struck, see this train coming toward him. It is unquestioned that the flagman at the crossing stood near

the steps of the said hotel and that he held a warning " stop " sign, which was about sixteen inches in diameter.    The fact that he ran or hurried across the track is thoroughly established.    There is some dispute as to just how far the decedent had gone when struck. The weight of the testimony would indicate that he had turned to his right and was proceeding southerly along the track towards the station, a distance, as already stated, of about two feet.    In any event, it is established that he had " cleared the track " and that he had finished the act of crossing ahead of the train; therefore, he had passed the point and period where it might be claimed that he was guilty of contributory negligence by passing in front of the train.    If the decedent was guilty of contributory negligence under the pleadings and under the submission to the jury, it was for attempting to pass along the side of the track inside of the passageway formed by the snow bank close to the oncoming train. The overhang of the locomotive is shown to have been thirty inches; hence the total clearance between the locomotive and the snow bank was less than two feet.    He knew that this train was coming when he crossed the track and as he turned to go to the station the locomotive was in plain sight and within a few feet of him.    As he walked along beside the track, the right side of his body was within thirty inches of the north rail and within a very few inches of the locomotive.    His knowledge of his close proximity to the oncoming locomotive cannot be questioned.    The question of contributory negligence is thus narrowed to the point as to whether or not he should have entered the said passageway with this condition existing.    The fact that he was seen leaning towards the snow bank as the train approached him indicates clearly that the place through which he attempted to pass was too narrow for a person of ordinary prudence and judgment to attempt to pass through.    This was not a public highway.    The snow was not shoveled out from this place in order to create a pathway.    It was snow thrown back from the track and piled up and the piling up of the bank along there naturally created the opening through which the decedent attempted to pass.    It was not a place constructed for the purpose for which he was using it.    Furthermore, the ground over which he passed on which the snow bank existed was not a public place for pedestrians.    It was not the ordinarily used route although the testimony shows that people crossed there in various directions.    Part of it was between the street line and the station platform and part within the highway boundaries.    There was no fence and the open space was covered with either cracked stone or gravel.    Had there been no snow there, one could have crossed in any direction.    As it was, the

decedent had the privilege of either waiting for the oncoming train to pass, or of continuing along the public highway to a point further north along which the regular sidewalk had been shoveled, until he reached a point near a store where he could have turned and approached the railroad station over the usually traveled route. Of course, in this event, he would have encountered deeper snow. There was no regular pathway shoveled across the highway at that point. The snow had simply been beaten down by automobiles, horses and wagons in crossing to and from the station. At the time the decedent was struck he had left or was leaving the usually traveled path to follow along and upon private property. Had there been no snow there, it is unquestionable that the decedent would not have chosen his path so near the rail. Under the circumstances he must have been walking within a few inches of the end of the railroad ties and he knew or he should have known that he was within striking distance of the oncoming locomotive, and the fact that the locomotive was practically upon him when he entered this passageway would lead one to believe that the decedent almost defied the existing danger, which he was aware of, rather than to make any effort to avoid such danger.

The jury returned a verdict in favor of the plaintiffs for the sum of $3,500. This verdict was set aside as contrary to the law and to the evidence, and a verdict directed against the plaintiffs upon the reserved motion, with costs, and dismissing the complaint, with costs, and judgment of dismissal was entered upon such order.

The judgment and order setting aside the verdict and dismissing the complaint should be affirmed, with costs.

VAN KIRK, Acting P. J., HINMAN and WHITMYER, JJ., concur; DAVIS, J., dissents, with an opinion.

DAVIS, J. (dissenting). The plaintiffs once having a general verdict in their favor are here with their complaint dismissed upon the merits. (Civ. Prac. Act, § 482.) To justify such dismissal there must be no evidence which presented a question of fact. (*Carlisle* v. *Norris*, 215 N. Y. 400, 403.)

The verdict and the rule to be applied on the dismissal of a complaint require us to give plaintiffs the most favorable consideration of every fact established on the trial and the benefit of every fair inference drawn from those facts. (*Foulke* v. *New York Consolidated R. R. Co.*, 228 N. Y. 269, 271.)

Plaintiffs' intestate was waiting at a hotel for the arrival of a train at the station diagonally across the street and tracks. At about the time the train was due he heard a locomotive whistle and started across the street toward the station. It turned out

that the approaching train was not the one he expected to take, although coming from the same direction. It did not slow up and stop, as he might have expected, but ran by the station at a high rate of speed. However, he crossed the tracks and had turned to go toward the end of the station platform when he was struck and killed.

As I read the record he was within the boundaries of the highway at the time the accident occurred. He was following what appeared to be a way provided to reach the end of the station platform abutting on the street. The bank of snow which prevented his escape was one created in part at least by the railroad company in throwing away the snow from the tracks. It cannot be assumed that he knew the amount of overhang of the locomotive, and it appears that he made an effort to avoid the danger by leaning over as far as possible against the snow bank. These facts and the fair inferences to be drawn therefrom do not seem to me sufficient to warrant a determination that the decedent was guilty of contributory negligence as a matter of law. I think the negligence of the defendant and the contributory negligence of the decedent were questions of fact upon which the jury have passed (*Mullen* v. *Schenectady R. Co.*, 214 N. Y. 300; *Chamberlain* v. *Lehigh Valley R. R. Co.*, 238 id. 233), and that the judgment should be reversed and the verdict reinstated.

Judgment and order affirmed, with costs.