MARTIN W. MULLEN, ADMINISTRATOR (F. ELLS, SUB-
STITUTED ADMINISTRATOR), *vs.* THE MOHICAN COM-
PANY.

Third Judicial District, Bridgeport, October Term, 1921.
WHEELER, C. J., BEACH, GAGER, CURTIS AND BURPEE, Js.

While the exercise of reasonable care by a decedent—alleged to have
been killed by the defendant's negligence—may be shown by
circumstantial evidence, the circumstances must be such as to
fairly lead to that conclusion, for neither court nor jury can sur-
mise or conjecture the use of such care.
In the present case the plaintiff's intestate, a boy eleven years old, was
sent by his mother to do some errands for her, and left their apart-
ment for that purpose about quarter past eight p. m. on the
13th day of May. He did not return, and early the next morning
his body was found, with a fractured skull, at the bottom of an
elevator shaft opening on a public court adjacent to the building
in which the decedent lived. When found, he had probably been
dead from four to eight hours. In doing his errands the decedent
might have passed the doorway opening into the elevator shaft,
which was usually closed when the elevator was not is use, but
was open on the evening in question, and the pit—about sixteen
feet deep and about eighteen inches from the face of the building—
was left without any protection. The night was pleasant, and four
witnesses who passed through the court between 7:30 and 9:30
p. m. noticed that the elevator doorway was open. *Held* that in
this situation the plaintiff was properly nonsuited, there being no
evidence of the exercise of that degree of care by the decedent
which ought to be expected of one of his age, experience and judg-
ment.
In some jurisdictions—but not in this State—the rule is, that in the
absence of eye-witnesses of the accident, the inferences to be drawn
from the instinct of self-preservation may stand in the place of
proof of due care.

Argued October 26th—decided December 23d, 1921.

ACTION by an administrator for causing the death
of his intestate by negligence, brought to the Superior
Court in New Haven County where the plaintiff was
nonsuited in a trial to the jury before *Kellogg, J.,* and

from the refusal of the trial court to set aside such judgment the plaintiff appealed. *No error.*

*William E. Thoms,* for the appellant (plaintiff).

*Clayton L. Klein,* with whom was *Claremont I. Tolles,* for the appellee (defendant).

BEACH, J.   The material facts testified to are as follows: Munroe Court in Waterbury runs easterly between brick buildings from North Main Street. It is about nine and a half feet wide, paved with asphalt, and has a curb and sidewalk two feet wide on the north side of a portion of its length.   On the southerly side of the court is the side wall of the brick building occupied by the defendant corporation.   Near the rear of the building defendant maintained an elevator shaft opening on Munroe Court through a doorway, which was ordinarily closed when the elevator was not in use by a vertically sliding iron screen, and was also protected when the screen was open by a vertically sliding wooden gate.   On the night of the accident both screen and gate were pushed up to the top of the doorway, leaving the elevator pit, which was about sixteen feet in depth, open and unprotected. At the bottom of the doorway there was a sill eighteen inches wide and about two inches high, which did not project into the court.

The deceased, a boy of eleven years, lived with his mother in an apartment building, from the rear of which a stairway used by the tenants led down into Munroe Court.   On May 13th, 1918, he was sent by his mother to do some errands for her.   He left for that purpose about 8:15 in the evening, and did not return.   Early the next morning his body was found at the bottom of the defendant's elevator shaft.   He

had then been dead from four to eight hours, and his death was due to a fracture of the skull, presumably caused by falling into the pit.

In performing his errands, the deceased might have had occasion to pass by the open doorway while going out of the court about 8:15 p. m., or while coming back to the stairway at some later hour. It was more or less dark in the passageway, yet light enough so that each of the four witnesses who passed through it that evening between 7:30 and 9:30 o'clock noticed that the elevator doorway was open. One witness testified that about 9 o'clock you could see where you were going; another, that about the same time there was some light coming in from the entrance to the passageway; a third, that it was kind of dark; and the fourth, who testified that there were no lights burning in the passageway, was not asked how dark it was. The night was fair, and there is no evidence that the pavement near the doorway was defective or slippery.

We do not agree with the defendant's claim that on the issue of the defendant's negligence the plaintiff's case necessarily depends on the attractive nuisance doctrine, which has been rejected in this State (*Wilmot* v. *McPadden,* 79 Conn. 367, 65 Atl. 157); for the jury might have found that the defendant was negligent in leaving an unguarded excavation so near the traveled pathway as to endanger travel. *Smith* v. *Milford,* 89 Conn. 24, 92 Atl. 675.

In our opinion this case turns on the question whether there was any evidence from which the jury might reasonably have found that the deceased fell into the elevator pit while in the exercise of that degree of care which ought to be expected of a boy of his age, experience and judgment. Evidence of due care may of course be circumstantial, as in the case of a railway passenger killed in a train wreck while sitting in a seat.

And though the injured party was himself an actor, the surrounding circumstances may justify the inference that he acted with due care, provided they point with reasonable certainty to that probability. Thus in *Allen* v. *Willard*, 57 Pa. St. 374, the deceased, a man in good health and of correct habits, was found at the bottom of an unprotected excavation which extended several feet into the traveled portion of a public sidewalk. The excavation was in shadow, and the deceased fell into it at night while on his way to visit a friend. These facts point with sufficient certainty to the probability that the deceased fell into the excavation while exercising due care, because due care does not ordinarily require one to anticipate and keep a lookout for unguarded excavations in the traveled portion of a public sidewalk.

The plaintiff asks us to adopt the doctrine, prevailing in some jurisdictions, that in the absence of eye-witnesses of the accident, the inferences to be drawn from the instinct of self-preservation may stand in the place of proof of due care. We think, however, that the rule applicable in this jurisdiction, where the plaintiff in an action for damages for personal injury caused by negligence is required to make it appear more probable than otherwise, by evidence and not by conjecture, that he was in the exercise of due care when injured, is the rule laid down in *Wiwirowski* v. *Lake Shore & M. S. Ry. Co.*, 124 N. Y. 420, 425, 26 N. E. 1023: "It is true that the want of negligence may be established from inferences which may be properly drawn from the surrounding facts and circumstances. . . . But such inference cannot be drawn from a presumption that a person will exercise care and prudence in regard to his own life and safety, for the reason that human experience is to the effect that persons exposed to danger will frequently forego

the ordinary precautions of safety. And when the circumstances point as much to the negligence of the deceased as to its absence, or point in neither direction, a nonsuit should be granted." In *Chase* v. *Maine Central R. Co.*, 77 Me. 62, 67, Chief Justice Peters said of this doctrine that the natural instinct of self-preservation may stand in the place of evidence of due care: "But the weakness of the plaintiff's position lies in the fact that this motive for personal safety does not operate upon the minds of men until they can clearly see that they are endangered by their carelessness. It does not keep them from careless acts. The danger is often not seen until it is too late to be extricated from it. The careless act usually precedes the moment when the natural instincts for self-preservation are aroused."

In principle we have already rejected the doctrine which the plaintiff asks us to adopt. In *Morris* v. *East Haven*, 41 Conn. 252, an action for damages for wrongful death caused by a defect in the highway, the plaintiff, to prove freedom from contributory negligence on the part of the deceased, offered testimony that the deceased was a careful driver. This also was a case where there were no eye-witnesses of the accident, and we held that the evidence was irrelevant, on the precise ground that the exercise of reasonable care in one instance would throw no light on whether it was exercised in another.

In our opinion there was no reasonable ground on the evidence for submitting to the jury the issue of due care on the plaintiff's part.

There is no error.

In this opinion the other judges concurred.