JOSEPH COOPERSTEIN, as Administrator of the Estate of LENA COOPERSTEIN, Deceased, Appellant, *v.* EDEN BRICK AND SUPPLY COMPANY, Respondent

Motor vehicles — negligence — contributory negligence — action for death of plaintiff's intestate who was struck and killed by defendant's motor truck while crossing a street — when evidence insufficient to show that decedent was guilty of contributory negligence by neglecting to look around before or while crossing the street.

1. Plaintiff's intestate was struck and killed by ·defendant's truck while crossing a street. The evidence for plaintiff shows that the truck was being operated by an employee of defendant who had with him another man; that the truck was being driven at a fast speed within about ten feet of the curbstone on the northerly side of the street which was on the right of the driver; that decedent was crossing the street from the northerly side of the street and had proceeded about twenty-five feet from the curbstone on the right of the driver and had nearly cleared the truck before she was struck. The driver was paying no attention to where he was going but, with his companion, was flirting with and calling out to some girls upon the northerly sidewalk. The Appellate Division held that plaintiff's intestate was guilty of contributory negligence as matter of law because one of the girls, who were on the sidewalk, testified that decedent did not look around toward the truck while she was crossing the street. She also testified that the men in the truck were hollering at her and her companions and that they attracted her attention and that they continued to look at the witness until the truck struck decedent. This testimony is not sufficient to show that decedent never looked around. There is no definite or satisfactory testimony that the decedent never looked up and down the street before she proceeded or while proceeding across the street.

2. It was for the jury to say what the witness meant by the words, " She never looked around," and they would be justified in believing that what the witness meant was that she did not see decedent look around, or else that when the witness did look at her decedent was not looking around.   The defendant did not establish contributory negligence as matter of law.   Whether or not the defendant established it as a matter of fact was a question for the jury and they found for the plaintiff.

*Cooperstein* v. *Eden Brick & Supply Co.*, 207 App. Div. 303, modified.

(Argued April 8, 1924; decided May 13, 1924.)

APPEAL from a judgment, entered December 19, 1923, upon an order of the Appellate Division of the Supreme Court in the first judicial department reversing a judgment in favor of plaintiff entered upon a verdict and directing a dismissal of the complaint.

*Benjamin W. Moore, Leonard F. Fish* and *Thomas J. O' Neill* for appellant.   Defendant did not establish conclusively that the deceased did not look.   (*Knapp* v. *Barrett*, 216 N. Y. 226; *Ochs* v. *Wood*, 221 N. Y. 536.)

*Alfred R. Bunnell* for respondent.   The reversal of the judgment and the dismissal of the complaint by the Appellate Division was in accordance with the law. (*Knapp* v. *Barrett*, 216 N. Y. 226; *Ford* v. *N. Y. C. I. R. R. Co.*, 236 N. Y. 346.)

CRANE, J.   On Tuesday, the 29th day of June, 1920, at about half past one in the afternoon, Lena Cooperstein, an elderly lady, about sixty years of age, was run over and killed by the defendant's motor truck at the corner of Claremont and Washington avenues in the borough of The Bronx, city of New York.

The administrator of her estate brought this action against the defendant for negligence causing her death and recovered a judgment at Trial Term which has been reversed by the Appellate Division.   The reversal was upon the law and the facts, the complaint being dismissed on the ground that the deceased was guilty of contribu-

tory negligence as matter of law. In this disposition of the case we think the Appellate Division was in error and that the question of contributory negligence was for the jury. The evidence when considered in the light most favorable to the plaintiff presents the following facts:

*The place of the accident:* Claremont parkway or avenue is a wide street running east and west, paved with Belgian block cobblestones. Washington avenue crosses it, running north and south. The next street east from Washington avenue is Bathgate avenue which runs into Claremont avenue from the north but does not cross the avenue. The accident happened between Bathgate avenue and Washington avenue within about twenty feet of Washington avenue. Claremont avenue is a well-traveled street, built up with stores on both sides.

*The defendant's truck and its operation:* Defendant's truck was a Republic two-ton truck in brand new condition, running at the time through Claremont avenue in a westerly direction past Bathgate avenue and down toward Washington avenue. It was operated by Harry Lenereux, a young man, twenty-four years of age. With him was another young man by the name of Percy Crump. Lenereux was driving the truck at fast speed within about ten feet of the curbstone on the northerly side of Claremont parkway which would be on his right. Halfway between Bathgate avenue and Washington avenue on the northerly sidewalk of Claremont parkway and about 100 to 150 feet from the corner of Washington avenue there were walking at the time from Bathgate avenue toward Washington avenue two young ladies, Ida Gelfand and Ida Monstein. They were eating ice cream cones. In passing these girls the men on the truck called out to them, tried to flirt with them, turned their heads to look at them, and while so doing were paying no attention to persons who might be crossing the street in front of the truck. In consequence the truck ran into and over Lena Cooperstein as she was crossing Claremont parkway

at the corner of Washington avenue. Ida Gelfand testified as follows: " Q. Did you hear any horn blow? A. I didn't hear no signal whatsoever. Q. Were these men looking around at you? A. They were. Q. Just before they struck this woman? A. They were." The left and front wheel of the truck passed over the chest of the old lady and killed her.

*Lena Cooperstein:* Lena Cooperstein lived at 1559 Washington avenue in The Bronx and was about sixty years of age. She was the mother of seven children, and a widow. She was crossing Claremont parkway at the corner of Washington avenue. She was proceeding from the northerly side of the street directly across to the southerly side, *i. e.*, she came from the side to the right of the driver of the truck and was proceeding from his right across to the left — from the north to the south. She had a basket of groceries or a shopping bag filled with different articles. She had proceeded from the north curbstone of Claremont avenue, a distance of about twenty-five feet, before she was struck. As the truck was about ten feet from the curbstone, she had nearly cleared the truck before she was struck. As before stated, she was struck by the left-hand front wheel of the truck, showing that she had almost reached a place of safety. If the truck had slowed up the least bit or had made the slightest turn to the right, the accident would not have happened. If this elderly lady had seen the truck up the avenue a hundred feet or more, as she left the curbstone, and had in fact walked almost to the middle of the street, nearly clearing the truck, did she not have the right to assume that the truck would slow up and give her a chance to cross or else deflect its course the least mite and keep out of her way? There was plenty of room to the right for the driver to have made a slight turn if he had been looking. He was paying no attention to where he was going. In answer to the court, Ida Monstein said: " The Court: Q. She had already got

pretty near the middle of the street when she was struck, hadn't she? The Witness: A. Yes, sir."

The Appellate Division was of the opinion that the deceased was guilty of contributory negligence as matter of law because Ida Monstein, the plaintiff's witness, made this answer to the following question: " Q. Did you see her look around at all? A. No; she never looked around." The jury, however, had a right to consider what this witness meant by this answer in view of her other testimony and what opportunity she had for seeing the woman from the time she was leaving the sidewalk until she was struck. A glance to right or left up and down the street may take but a moment. The witness who gave this testimony was also looking at the men on the truck and she kept looking at them until the truck ran into the woman. Her testimony is as follows: " Q. Did these men holler at you? A. Yes, they did. Q. Did they attract your attention? A. Yes, sir. Q. What did they say to you? A. They hollered, ' We would like to have a lick of your ice cream.' Q. They continued to look at you until the truck ran into this woman? A. Yes, sir."

How could Ida Monstein be looking at the men on the truck until the woman was struck, and then with any accuracy of statement say that the woman never looked around? Necessarily there was some time while the woman was crossing the street when this witness did not see her. The jury would have been justified in believing that what the witness meant was that she did not see the woman look around, or else that when she did look at her she was not looking around. There is no definite or satisfactory testimony that the woman never looked up and down Claremont parkway before she proceeded or while proceeding across the street. Again it was for the jury to say what the witness meant by the words " looked around." It would take but a slight turn of the head to look up Claremont avenue from the corner of Washing-

ton avenue, a distance of a hundred feet or more, and this slight turn of the head might not have been noticed by the witness, Ida Monstein, flirting with these men on the truck at a distance of one hundred feet above the corner and away from the deceased. The burden was on the defendant to allege and prove that Lena Cooperstein met her death through her own contributory negligence.

The defendant did not establish this contributory negligence as matter of law. Whether or not the defendant established it as matter of fact was a question for the jury.

The *A*ppellate Division, therefore, should not have dismissed the complaint but as they have also reversed upon the facts, there must be a new trial. The judgment appealed from should, therefore, be modified by striking out the dismissal of the complaint, and granting a new trial, with costs to abide the event.

McLAUGHLIN, J. (dissenting). I dissent. To justify the jury in rendering a verdict in favor of the plaintiff it had to find not only that the defendant was negligent, but that the intestate was free from negligence. The evidence was sufficient to justify a finding that defendant was negligent, but the record is absolutely barren of any evidence which would justify a finding that the intestate exercised any care whatever as to her own safety; on the contrary, the evidence is that she did not exercise any care from the time she left the sidewalk until she was struck by defendant's car. The plaintiff's witness Ida Monstein — and she was the only witness who gave any testimony as to the movements of the intestate from the time she left the sidewalk until she was struck — testified, referring to the intestate, as follows: " Q. Then the woman was just a short distance from you on the curb? A. Yes, sir. Q. And the truck was coming down? A. Yes, sir. Q. Then she stepped off the curb? A. Yes, sir. Q. And then she was hit? A. Yes, sir.

Q. Did you see her look around at all? A. No; she never looked around."

It is suggested the jury might determine what this witness meant by her answer that " she never looked around." The words indicate as clearly as anything can what the witness had in mind and the idea she meant to convey. The ordinary meaning, in the absence of something to suggest to the contrary, must be given to the witness' answer and if so, it affirmatively appears the intestate did not look to ascertain whether a car was approaching. It was broad daylight. There was nothing to obstruct the intestate's view or distract her attention. The testimony above quoted was uncontradicted and its truthfulness had been certified to by the plaintiff's calling her as a witness. The jury, therefore, was not justified in disregarding it.

Before she attempted to cross the street she was bound to look for the purpose of ascertaining whether it was safe for her to do so. This court has repeatedly held that one who crosses a city street without exercising his faculty of sight is negligent as matter of law. (*Ford v. N. Y. City Interborough Ry. Co.*, 236 N. Y. 346; *Knapp v. Barrett*, 216 N. Y. 226; *Zucker v. Whitridge*, 205 N. Y. 50; *Peterson v. Ballantine & Sons*, 205 N. Y. 29; *Mastin v. City of New York*, 201 N. Y. 81.)

To escape the legal effect of not looking before attempting to cross a street proof must be given that even if the injured person had looked the accident would still have happened. Here, there is no such proof. The only fair inference is that if she had looked the accident would have been avoided.

I am of the opinion the judgment is right and should be affirmed.

HISCOCK, Ch. J., CARDOZO, POUND, ANDREWS and LEHMAN, JJ., concur with CRANE, J.; McLAUGHLIN, J., reads dissenting opinion.

Judgment accordingly.