I. L. KOTLER, ADMINISTRATOR (ESTATE OF MARY MAX-
WELL) *vs.* FRANK E. LALLEY, THIRD, ET AL.

Third Judicial District, New Haven, June Term, 1930.
WHEELER, C. J., MALTBIE, HAINES, HINMAN AND BANKS, JS.

Argued June 12th—decided July 31st, 1930.

*James E. Murphy* and *I. L. Kotler,* for the appellant
(plaintiff).

*John A. Cornell, Jr.,* for the appellees (defendants).

HAINES, J. The plaintiff's case was based upon the
claim that the decedent Mary Maxwell while crossing

Clinton Avenue, Bridgeport, on foot, in the evening of December 28th, 1928, was struck by an automobile driven in a careless, reckless and negligent manner by the defendant, dragging her a considerable distance before the body fell to the roadway and thereafter failing to slacken his pace or stop. It was alleged that the defendant was negligent in that the car was operated at an unreasonable and unnecessary speed having regard to the width, use and condition of travel upon the highway; that the defendant failed to have the car under control, and failed to avoid striking the decedent when he had a last clear chance to do so. It was further alleged that the decedent was free from contributory negligence. The decedent suffered serious bodily injuries from which she died three days thereafter, without having made, so far as appears, any statement.

It is agreed that there was no eyewitness of the collision between the car and the decedent, save the two parties involved. At the time of the trial the decedent was dead and the defendant was not in court, his father stating that he was "around Bridgeport somewhere" and his version of the affair, obtainable only from statements previously made to others, contains no reference to decedent's conduct. Upon the presentation of the plaintiff's evidence, a motion for nonsuit was granted by the court, and judgment entered for the defendant.

In denying a motion to vacate this judgment the court said that giving the most favorable construction to the plaintiff's evidence, it failed to show either a prima facie case of negligence on the part of the defendant or reasonable care on the part of the decedent.

A review of the evidence leads us to the conclusion that the jury might reasonably and logically have found the defendant negligent. We think the trial

court failed to accord the force which the law gives to the conduct of the defendant and the inferences and presumptions legally created thereby.

The defendant after striking the decedent, a woman fifty-three years of age, with his car, and knowingly carrying her a long distance on the front of the car, not only failed to stop, but when the body fell to the pavement he sped away and escaped without any attempt whatsoever to ascertain the result of what he had done or to render any assistance, but left her on the street to die or exposed to further injury by cars proceeding in that direction. Such conduct was reprehensible to the last degree and merits the severest condemnation.

A jury is entitled to entertain certain presumptions and draw inferences of fact from such conduct in the nature of admissions against the defendant.

We have recently had occasion to consider these upon a very similar state of facts in the criminal case of *State* v. *Ford,* 109 Conn. 490, 146 Atl. 282, where we said at page 496: "The conduct of the accused in leaving the bodies of the girls [he had struck] lying in the road while he sped on with his car . . . may be considered by the trier in determining his guilt since it tends, unexplained, to prove a consciousness of guilt."

In that case as in this, the defendant failed to take the stand to explain the occurrence, and we said (p. 497) and now reaffirm, that "the privilege of refraining from testifying, if he so elect, does not protect him from any unfavorable inference which may be drawn by his triers from his exercise of the privilege."

While defendant's brief does not specifically concede the negligence of the defendant, it does recognize the force of what has been said and adopts the fact of his negligence as a premise in the discussion of contributory negligence of the decedent. Without further ref-

erence to this feature of the case, we turn to the second element of proof required of the plaintiff, viz.: that the decedent was free from contributory negligence.

There is no direct evidence on this point and from the circumstances disclosed at the trial it is sufficiently obvious that no evidence of the conduct of the decedent was obtainable, since the decedent was dead and the defendant who could have spoken chose not to do so.

Upon the legal situation developed by such a state of facts, there is a marked divergence of view in different jurisdictions. In some it is said that where there is no obtainable evidence as to due care on the part of the injured party by reason of his death, a presumption of due care is raised from the natural instinct of self-preservation, and the reason for the rule is said to lie in the injustice of the common-law rule requiring as a condition of recovery that the plaintiff shall prove the decedent's freedom from contributory negligence. It is argued that where the defendant's act has caused the death thus depriving the plaintiff of evidence, and there were no eyewitnesses or any direct testimony as to the decedent's conduct, the court should recognize the natural instinct of self-preservation and the instinctive avoidance of bodily harm and suffering and so infer or presume that the decedent exercised due care until the contrary appears. This view seems to obtain in many States, while in others the common-law rule has been changed by statute so as to in effect put upon the defense in such cases, the burden of showing decedent's contributory negligence. *Chicago & Alton Ry. Co.* v. *Wilson*, 225 Ill. 50, 80 N. E. 56; *Parsons* v. *Du Pont De Nemours Powder Co.*, 198 Mich. 409, 104 N. W. 413, 415; *Savage* v. *Rhode Island Co.*, 28 R. I. 391, 67 Atl. 633, 636; *Cogdell* v. *Wilmington & W. R. Co.*, 132 N. C. 852, 44 S. E. 618;

*Baltimore & P. R. Co.* v. *Landrigan,* 191 U. S. 461, 471, 24 Sup. Ct. 137; *Texas & Pac. Ry. Co.* v. *Gentry,* 163 U. S. 353, 366, 16 Sup. Ct. 1104. This doctrine has never been recognized in this State, but on the contrary has been definitely rejected; *Mullen* v. *Mohican Co.,* 97 Conn. 97, 100, 115 Atl. 685; *Tracy* v. *Welch,* 109 Conn. 144, 149, 145 Atl. 662; and we have no statutory provision as in some other States to enforce the obviously just requirement that the burden of proof in this particular class of cases, be put in effect upon the defendant.

While we have held probabilities from slight circumstantial evidence in some cases to justify a finding of due care, as suggested in the *Mullen* case, we still adhere to the common-law doctrine that the burden rests upon the plaintiff to establish due care. When the circumstances point as strongly to the absence as to the existence of due care or point in neither direction a nonsuit must be granted. *Mullen* v. *Mohican Co., supra,* at page 101, citing *Wiwirowski* v. *Lake Shore & M. S. Ry. Co.,* 124 N. Y. 420, 425, 26 N. E. 1023.

The evidence in the present case is bare of any fact rendering it probable or improbable that the decedent exercised due care. Indeed, we find nothing which points in either direction and are forced to the conclusion that the plaintiff's proof was fatally defective in this respect.

There is no error.

In this opinion MALTBIE, HINMAN and BANKS, Js., concurred.

WHEELER, C. J. (dissenting). The jury might reasonably have found these facts: The plaintiff's decedent walked east on the north sidewalk of Maple-

wood Avenue in Bridgeport and when she came to its intersection with Clinton Avenue she continued south over the crosswalk which was forty feet long and had reached about the middle of the crossing, as the location of the broken glass of the headlight upon the roadway showed, when she was struck by the automobile operated by defendant. He was driving east on Maplewood Avenue until he came to Clinton Avenue when he turned to go north on Clinton Avenue. He was then traveling at the rate of twenty-five miles an hour. The left front of the car struck the decedent just to the right of the center of the crossing, and she was carried on the front of the car for a distance of about one hundred and thirteen feet, when she fell from the car to the roadway of Clinton Avenue. There was a lighted arc light at the southeasterly corner of these intersecting streets, its arm projecting northwesterly toward the center of these intersecting streets. It was dark, but it must be assumed that this car was equipped in accordance with the statute, having headlights which threw their rays two hundred feet. After the car which the defendant was operating struck the decedent and her body had fallen to the highway, the defendant did not stop but drove on leaving the body in the roadway of Clinton Avenue exposed to passing traffic. This location is within the thickly settled portion of Bridgeport. Shortly after, other passing automobilists saw the body of the decedent, stopped and removed it to a place of safety on the grass plot alongside the east sidewalk of Clinton Avenue. The defendant made no report of the accident and concealed his participation in it from the authorities until the police questioned him on January 14th when he said that his car had struck the decedent and he got so panicky he did not know what he had done and drove off. His then attorney, not his present attorney,

at this point refused to permit him to make a statement to the police as they requested. Before the coroner on January 15th the defendant testified that he did not see the decedent at all until she fell from his automobile and did not know how far she was carried. The defendant made no report of this accident as required by the motor vehicle law. He did not take the stand as a witness, nor was he present in court, although he was at the time of the trial in Bridgeport, the place of trial. Upon this evidence the jury must have found that the defendant concealed his participation in this tragedy from December 28th to the following January 14th and until the public authorities discovered his connection with it. This is a typical case, of a most revolting character, of what is commonly called a "hit and run case."

The complaint sets up as the cause of the killing of the decedent two causes of action; the reckless misconduct of the defendant, as well as his negligent misconduct. Reckless misconduct is known in our law as wanton misconduct, sometimes called wanton conduct, both mean the same thing, that is, conduct which is in reckless disregard of, or indifference to consequences to, the rights of others. In their result wanton misconduct and wilful misconduct are equivalents. *Bordonaro* v. *Senk,* 109 Conn. 428, 431, 432, 147 Atl. 136. An action based upon mere negligence is wholly apart from that based upon wanton misconduct. We define negligence in *Farrington* v. *Cheponis,* 84 Conn. 1, 8, 78 Atl. 65, as "the failure to conform one's conduct to a standard of duty prescribed by legislative authority, or to conform it to the common-law requirement to exercise reasonable care under the circumstances." This action is not predicated upon a violation of a "standard of duty prescribed by legislative authority." So far as the complaint sets up an action

of negligence it is based upon the failure of the defendant to exercise reasonable care, which is that degree of care which the reasonably prudent man would exercise under the circumstances present in the case. Comparing these two causes of action their difference is easily discernible.

We must then examine the facts in evidence to ascertain whether the jury might reasonably have found that the cause of the decedent's death was due to defendant's reckless misconduct, or his indifference to consequences. He was driving on Maplewood Avenue at twenty-five miles an hour or thirty-six and two third feet a second, in a thickly settled portion of Bridgeport and purposed turning north on Clinton Avenue, a much traveled street. In making this turn he knew that he had to pass over this crossing and that travelers were liable to be walking upon it. We may assume, in the absence of evidence, that the decedent was walking at an ordinary rate of speed for a woman, which would not exceed two and three quarters miles an hour. When she stepped from this curb, since the defendant was traveling at least nine times as fast as she was, and she had proceeded twenty feet before she was hit, he was then about one hundred and eighty feet west of the crossing. On any assumption that could be made the defendant was at least one hundred feet from this crossing when the decedent stepped from the curb. On he drove, keeping no lookout whatever, since he did not see the decedent he says, until her body fell from the front of his car at a point one hundred and thirteen feet from the impact at the crossing. This is not the case where the traveler steps from the curb too late for the driver of the car to avoid hitting her although he exercised all reasonable care to do so. It is not the case where the driver was watching but failed to exercise reasonable care to avoid hit-

ting her. It is the case of the driver who is operating a machine which requires constant and concentrated attention to avoid injury to the travelers on foot or in conveyances, and especially at crossings where he must anticipate travelers will be rightfully passing, and who regardless of the consequences of his conduct drives on at twenty-five miles an hour keeping no lookout and giving no warning of his approach, when he could have seen the decedent from the lights of his own car and the light from the suspended arc light at the southeast intersection of these streets, in time to have avoided striking her by either stopping his car, or turning it from its course in the center of the street to either side where there was an ample open space for him to pass. The operation of this car in this manner must be characterized as indicating a reckless disregard by the defendant of the just rights and safety of this decedent, and also of the consequences of his action. Such a conclusion is fatal to the position taken in the majority opinion that there was no evidence presented by the plaintiff of her own due care as required by our rule of law. It is not under our law incumbent upon a plaintiff to prove his own due care, that is, his freedom from contributory negligence, when his action is based upon the defendant's wanton misconduct. We state our unvarying rule, and cite in its support five of our well known cases in *Bordonaro* v. *Senk,* 109 Conn. 428, at page 433, 147 Atl. 136: "The defense of contributory negligence is not available where injury is inflicted under conditions open to the charge of wilfulness or wantonness."

We turn now to the cause of action of negligence which is set up in the complaint and upon which my associates sustained the trial court in granting a nonsuit. That cause of action must be resolved upon the facts in evidence to which we have referred and to

other facts in evidence to which we shall refer. The ruling was based upon the granting of the nonsuit and the sustaining of that ruling means that my associates hold, as matter of law, that the plaintiff had made out no case within the rule we have adopted controlling the granting of nonsuits. That rule is as well stated by CHIEF JUSTICE BALDWIN in *Girard* v. *Grosvenordale Co.*, 83 Conn. 20, 25, 74 Atl. 1126, as in any of our opinions: "In passing upon the motion for a nonsuit, the Superior Court was bound to regard the truth of such of the evidence introduced by the plaintiff as went furthest in support of the complaint, as admitted, and to take into account every favorable inference that might legitimately be drawn from it. It was enough if he had thus made out a prima facie case, though it might in the opinion of the court be a weak one. 'A party has the same right to submit to a jury a weak case as he has to submit a strong one.' *Cook* v. *Morris*, 66 Conn. 196, 211, 33 Atl. 994." My associates conclude that the jury might have found the defendant negligent but that there was no "direct evidence" of the conduct of the decedent obtainable since she was dead and the defendant chose not to speak, and the evidence was "bare of any fact rendering it probable or improbable that the decedent exercised due care," and, therefore, the plaintiff had failed to support the burden upon him of proving that the decedent was free from contributory negligence. A plaintiff has never been required to assume the burden of proving freedom from contributory negligence by direct evidence, especially is this true in a case such as this where there is no eyewitness except the defendant and he refuses to make a statement.

It has been held to be sufficient to prove the due care by the circumstances in the jurisdictions which enforced the rule as we did, prior to the change in

their rule by statute or decision in cases where there was no eyewitness.

The Vermont Supreme Court, in *Higgins* v. *Metzger*, 101 Vt. 285, 294, 143 Atl. 394, held: "The burden of proof is on the plaintiff; but direct evidence and affirmative evidence of due care on his part is not required by the law." In *Smith* v. *Boston Gas Light Co.*, 129 Mass. 318, 319, it is held: "But this [burden of showing due care] . . . although, in form, a proposition to be established affirmatively, need not be proved by affirmative testimony addressed directly to its support." *Morrison* v. *New York Central & H. R. R. Co.*, 63 N. Y. 643, and *Button* v. *Hudson River R. Co.*, 18 N. Y. 248, so hold, and so do we in *Mullen* v. *Mohican Co.*, 97 Conn. 97, 99, 115 Atl. 685.

In *Wood* v. *Danbury*, 72 Conn. 69, 43 Atl. 554, we held that whether a plaintiff exercised reasonable care is usually determined by the trier as a matter of inference from established facts, rather than from direct evidence. It has been similarly held in *Eammes* v. *Caplan*, 252 Mass. 205, 208, 147 N. E. 582. And in *Mullen* v. *Mohican Co.*, *supra*, at page 100, we held that the rule applicable in this jurisdiction, was that the plaintiff in an action for damages for personal injury caused by negligence, is required to make it appear more probable than otherwise, by evidence and not conjecture, that he was in the exercise of due care when injured.

The evidence in this case must also be weighed in the light of that other principle of the law that where there is no eyewitness of the accident and the decedent is dead, as in this case, less evidence is required in establishing plaintiff's due care than if she were alive. *Brott* v. *Auburn & S. Electric R. Co.*, 220 N. Y. 92, 97, 115 N. E. 273; *Mullen* v. *Schenectady Ry. Co.*, 214 N. Y. 300, 108 N. E. 412.

From these and many other authorities we deduce the governing principles in the consideration of the evidence in the action of negligence to be: That the proof may be and generally is through the circumstances and by inference rather than by direct evidence, that all that is required is to prove by the evidence that it is more probable than otherwise that the decedent acted with reasonable care; that less evidence to prove this is required than if there were eyewitnesses and the decedent were alive, and that it is the almost invariable rule that the due care of the plaintiff is a question of fact for the jury and not one of law for either the trial court or this court. A good illustration of the last point is found in *Cooperstein* v. *Eden Brick & Supply Co.*, 238 N. Y. 200, 144 N. E. 501. The plaintiff when struck by the car defendant was operating was crossing the street upon the part of the street intended for that purpose, and in about its middle. Her right as a traveler in this location was superior to that of the defendant who was required to exercise greater care to avoid injury to a traveler upon a crosswalk, whom he might well expect to be there, than if he were crossing the street in the middle of the block, a location where the driver would not ordinarily expect to meet the traveler on foot. *Hizam* v. *Blackman*, 103 Conn. 547, 552, 131 Atl. 426; *Twinn* v. *Noble*, 270 Pa. St. 500, 113 Atl. 686. When decedent stepped from the north curb to cross the street it could not be inferred as a matter of fact, that she was negligent in continuing across the street in the expectation that the driver of the car would respect her superior right in passing over this crosswalk. Much less can it be held as a matter of law, as the sustaining of this nonsuit must hold, that she was negligent in continuing on.

There is no suggestion that the decedent was run-

ning or hurrying on in front of the car; the defendant in all probability must have seen the decedent if she had run or hurried or shown her danger or distress by act. On the contrary, there is no evidence of fault on her part.

We have in evidence the place where the decedent was struck as one where she had a right to be, the fact that she had walked from the curb for twenty feet before she was hit, the fact that the defendant had he been keeping a reasonable lookout could have seen her from the time she left the curb, and from there to the place in the middle of the street, could have seen her every moment in the zone of danger if he continued on in the line he was traveling, and the fact that he could have avoided striking her by going upon either side of her. His left mudguard hit her indicating that his car was over the center of the roadway. He could easily have stopped his car after she left the curb. Judicial notice cannot be taken of the shortest distance the defendant's car traveling at twenty-five miles an hour could be stopped in, but at least judicial notice may be taken that this car could have been stopped in at least seventy-five feet. The decedent had the right to make these assumptions as she stepped off the curb and to have further assumed that the defendant would either stop his car or go in her front or rear. She had the right to assume that he would not run her down so long as she was visible to him by the lights of his car and of the arc light at the corner. My associates are in error in asserting that there is no evidence of her conduct. We have pointed these facts out as indicative of her conduct with sufficient definiteness. They bring the case within the principles announced in *Mayo* v. *Boston & Maine Railroad*, 104 Mass. 137, 140, and not infrequently adhered to in other decisions: "All the cir-

cumstances under which the injury was received being proved, if they show nothing in the conduct of the plaintiff, either of acts or neglect, to which the injury may be attributed in whole or in part, the inference of due care may be drawn from the absence of all appearance of fault."

There are other facts which seem to me of controlling importance in determining the probability or improbability of the decedent having exercised due care. The servant woman who was run down and killed cannot tell as a witness of her own conduct prior to being struck by defendant's car. The defendant still lives and has been in a position from the date of this tragedy to the trial to tell of his conduct, and if he knows, of her conduct. He drove away and concealed his responsibility for what had occurred until the police interviewed him over two weeks later. He said to them, and his lawyer explains at the trial, that the young man was panic-stricken, and that, and not his own consciousness of guilt led him to drive away and leave his victim to die or be exposed to further injury from cars proceeding along this highway. Was it panic which caused him to continue to conceal, as he did, his active connection with this tragedy after he had secured advice and counsel? Or was it because it was felt that concealment was a safer protection against liability than any explanation he could offer?

There is no occasion to repeat the story of the defendant's further conduct. It all is a revelation of a confirmed consciousness on his part of his responsibility for the death of this woman. The same evidence of conduct on the part of the defendant in a criminal action against him would have required the submission of the issue of his guilt upon the charge of manslaughter to the jury. *State* v. *Ford,* 109 Conn. 490, 146 Atl. 828.

Couple his conduct with the circumstances to which we have referred and it is my judgment that the average man or woman would think them sufficient to establish the decedent's freedom from contributory negligence, and place the sole responsibility for the death of the decedent upon the defendant. The conduct of this defendant is an evidential fact supporting the plaintiff's burden of proof and falls within the rule of this court as announced in *Moffitt* v. *Connecticut Co.,* 86 Conn. 527, 530, 86 Atl. 16: "An evidential fact which men generally would act upon in the affairs of their life will logically aid in determining a legal issue and ought to be held legally relevant and of probative value. And this is the test of legal admissibility."

To permit the "hit and run driver," under the circumstances present in this case, to escape civil liability for his wrong because the dead cannot speak is to give him the protection of a rule of law, that the plaintiff to recover must prove that the decedent's own negligence did not materially contribute to her death, which his own conduct has made inapplicable, and a rule which in any relation of life under like circumstances would be repudiated as unjust and inhuman.

Any other conclusion, in my judgment, not only wrongs the dead and those in interest surviving her, but wrongs society by permitting the guilty "hit and run driver" to escape civil liability for his wrongful conduct, if he has the fortune to seal the mouth of his victim in death.

There is one other feature of this case which must be referred to, although of necessity, presented far too inadequately in proportion to its extreme merit.

The rule requiring a plaintiff to prove his own freedom from negligence in case of an injury done to him by a defendant imposed upon the plaintiff a negative burden, which is seldom or never required in other

actions. From a legal point of view no one has ever succeeded in supporting this anomaly in our jurisprudence in a convincing way. The rule had been repudiated by decision or statute in most of the States and by the Federal courts at the time (1913) that Shearman and Redfield issued the latest edition of their work on negligence in which, in § 109, the authors say: "The weight of authority in support of the rule that the burden of proof of contributory negligence is upon the defendant is now so completely overwhelming that we omit most of our own argument in its favor, contained in earlier editions, when a majority of decisions were the other way. We then stated that our own view of the question agreed entirely with that expressed by the late Judge Duer [*Johnson* v. *Hudson River R. Co.*, 5 Duer (N. Y.) 21]. That able judge held negligence on the part of the plaintiff to be a mere matter of defense to be proved affirmatively by the defendant, although it might, of course, be inferred from the circumstances proved by the plaintiff. . . . When only ten States out of forty-five adhere to a rule condemned by the Supreme Court of the United States, it would be a waste of time to discuss the question further." Since 1913 Massachusetts, New York, Maine, New Hampshire, and in personal injury and death cases Indiana, have by statute adopted the rule of most of the States. Of the remaining States, Michigan, Iowa and Rhode Island adopt the rule that where the one injured is dead and there are no eyewitnesses of the injury, a presumption arises that he was exercising due care, based upon the natural instinct of self-preservation which is a rebuttable presumption. Illinois adopts the rule: In the absence of eyewitnesses due care on the part of the deceased may be inferred from proof that the decedent was habitually careful,

prudent and cautious in his conduct. *Casey* v. *Chicago Rys. Co.*, 269 Ill. 386, 109 N. E. 984.

Vermont, in *Hill* v. *New Haven,* 37 Vt. 501, held that in the first instance the plaintiff need not offer affirmative proof of his freedom from negligence contributing to his death or injury, but we judge this rule no longer obtains there. *Higgins* v. *Metzger,* 101 Vt. 285, 294, 143 Atl. 394.

Our own court has declined to adopt the presumption of due care based upon the instinct of self-preservation.

In we think not to exceed two States, the rule which we still follow unbendingly, is also followed, but not even in the two States with equal fidelity. The authority of the United States Supreme Court and of all the States save these three, are either against it or their doctrine would enable the plaintiff to recover in a case such as this. In a case where the injured person died as a result of her injury and there is no eyewitness, save perhaps the defendant, my associates say, "we have no statutory provision as in some other States to enforce the obviously just requirement that the burden of proof in this particular class of cases, be put in effect upon the defendant." This is a recognition of the fact that our rule of procedure is manifestly unjust and ought to be corrected by legislation.

I agree in the view of my associates that our rule is an unjust one. I agree also that if it cannot be corrected by this court it should be done by legislation. But I cannot agree that this court cannot change the rule of procedure it has itself adopted when it reaches the conclusion that its rule is unjust, and that it is compelled to deny to litigants the justice which is their due, because of its adherence to the precedent of its admittedly bad rule. The court unquestionably has that power. The law of torts is in the main judge-

made law. We ameliorated the harshness of this rule imposing the burden upon the plaintiff of proving his freedom from contributory negligence by excluding from this rule cases involving wilful or wanton misconduct. An injury resulting in death with no eyewitness, save the defendant hit and run driver, presents an even harsher example for the application of this rule than did that of wilful or wanton misconduct. True it is, the power must be exercised with utmost caution, for certainty and uniformity in the law are much dependent upon "adherence to precedent." But when the court has no hesitancy as to the justice of a change, has before it indubitable proof that it will promote the social welfare, and finds in recorded opinion and legislative act, an all but universal judgment condemning a rule of law, there is no occasion to send the injured to the legislature to correct the rule made by the court which experience had adjudged to be incurably bad. A background such as this would justify a change in the substantive law, much more will it justify a change in the procedure, in the method of trying a case, in the determination of which party shall have the burden of proof. Procedure was devised to elicit the truth and preserve just rights, not to suppress the one and defeat the other. In his book "The Nature of the Judicial Process," at page 156, Chief Judge Cardozo says: "The considerations of policy that indicate adherence to existing rules where substantive rights are involved, apply with diminished force when it is a question of the law of remedies."

The common law, which is the governing force of our life, is the product of slow and measured growth.

Legislation does not know its established methods and has not its flexibility and capacity for adaptation.

It is a grave error for a court to delegate to the legislature the duty which is knocking loud at its door.

104

Time and added experience have confirmed me in the view expressed in 1915 in my concurring opinion in *Dwy* v. *Connecticut Co.*, 89 Conn. 74, 92 Atl. 883, which I venture to repeat (p. 99): "That court best serves the law which recognizes that the rules of law which grew up in a remote generation may, in the fullness of experience, be found to serve another generation badly, and discards the old rule when it finds that another rule of law represents what should be according to the established and settled judgment of society, and no considerable property rights have become vested in reliance upon the old rule. It is thus great writers upon the common law have discovered the source and method of its growth, and in its growth found its health and life. It is not and should not be stationary. Change of this character should not be left to the legislature."