John Grzys, Administrator (Estate of John Grzys, Jr.) *vs.* The Connecticut Company et al.

Joseph Klimek, Administrator (Estate of Stanley Klimek) *vs.* The Connecticut Company et al.

George Tyburcky, Administrator (Estate of Anna Nowak) *vs.* The Connecticut Company et al.

Maltbie, C. J., Hinman, Avery, Brown and Jennings, Js.

Argued December 7th, 1937—decided February 1st, 1938.

*William H. Comley,* with whom, on the brief, was *Sidney A. Johnson,* for the appellants (defendants).

*Samuel E. Friedman,* with whom was *Irwin E. Friedman,* and, on the brief, *Edward A. Dworken,* for the appellees (plaintiffs).

BROWN, J. These three cases, arising out of the same accident, were tried together to the jury upon identical issues except as to damages. In their appeal in each case the defendants claim that the court erred in charging the jury, and in denying their motion to set aside the verdict. The plaintiffs' decedents, while riding in a Packard sedan in a westerly direction on the Boston Post Road in Westport, were killed by a collision with a maple tree near the edge of the north shoulder of the road, about five hundred feet west of its intersection with Turkey Hill Road. From a point twenty-five feet east of the tree, a two-strand steel cable fence with wooden posts extends easterly along the north edge of the seven and one-half foot wide hard-surfaced shoulder for three hundred and thirty-five feet. The thirty-six foot wide concrete highway

is straight at this place on a grade descending to the west from the intersection. Between 10.30 and 11 o'clock on the night of April 26th, 1936, John Drapala drove his Packard sedan westerly along the Post Road. At a point one hundred and fifty feet east of the tree it ran off onto the north shoulder and striking a fence post ninety feet east of the tree, continued along, scraping against the fence until the right side of the car crashed into the tree. Thereby its right side was demolished, the passengers were thrown out and injured, and the car came to rest thirty-six feet southwest of the tree, headed in a northeasterly direction. Meantime the defendant company's bus, driven by the defendant Price as its agent, was proceeding easterly along the Post Road. As it overtook and proceeded to the left of another eastbound car, it passed the Packard and was not brought to a stop until it reached a point just west of Turkey Hill Road. After discharging a passenger there, Price drove the bus on to Bridgeport. These facts are not in dispute. The plaintiffs claimed, however, that through the defendants' negligence the left front corner of the bus came in contact with the left rear fender of the Packard at a point two feet north of the center line of the road and forty-six feet southeast of where it ran off onto the north shoulder in consequence thereof. The defendants claimed that the bus did not strike the Packard at all, but that Drapala, its driver, by reason of excessive speed lost control of the car causing it to go off onto the shoulder taking the course it did, and that as it crashed against the tree, the bus was passing by on the other side of the road.

The first claimed error in the charge is the reference made by the court to the defendant Price's failure to stop and render aid. Among other grounds, the complaint alleged that the defendants were negligent,

causing the collision, "in that he [Price] knowingly caused injury to other persons and property, yet did not stop to ascertain the extent of the injuries and render such assistance as might have been needed but did in fact evade all responsibility for said accident." Referring to this allegation, the court charged that even if this allegation were true it could not have been the proximate cause of the collision between the two vehicles since Price's conduct referred to was subsequent to the impact. It further charged in substance that if there was a collision, and Price knew of it, knew or should have known it resulted in injury to others, and yet failed to stop to ascertain their injuries and render necessary assistance, there would be a violation of the statute. It then continued that while this would not be a proximate cause of these injuries, the jury might consider these facts in passing upon the question of whether Price "had guilty knowledge of a collision having occurred, and of his being guilty of some negligence on his part as alleged, and give these facts such weight as you reasonably think proper in view of all the circumstances and facts appearing in the case."

The defendants complain because the court did not tell the jury more clearly to ignore this allegation of negligence. Shortly before its use of the words quoted, however, the court had defined proximate cause, and while it further stated that violation of a statute would constitute negligence, it added that either claimed acts of negligence or violation of the statute to be actionable must be the proximate cause of the injury. This essential to liability was reiterated near the end of the charge. In the light of these statements the language complained of amounted to an explicit instruction that Price's alleged failure to stop and assist could not constitute actionable negligence.

The defendants further contend that his failure to return to the wrecked car could not have been considered as evidence of negligence. As we said, with reference to a similar situation, in *Kotler* v. *Lalley,* 112 Conn. 86, 88, 151 Atl. 433, "A jury is entitled to entertain certain presumptions and draw inferences of fact from such conduct in the nature of admissions against the defendant." Applying this principle, the court by its language correctly instructed the jury as to the limits within which and the purposes for which they could properly consider this evidence. The court did not err in this portion of its charge.

The defendants' second claim is that the court erred in charging: "Now if you cannot find that the plaintiff has proven that there was a collision between these two vehicles I do not see how, upon the theory on which this case was tried, that you could find a verdict for these plaintiffs." The case was tried solely on the theory that the accident resulted from an actual contact between the bus and the Packard car. The defendants contend that, therefore, since the complaint contained eleven allegations of negligence, no one of which would have sustained a verdict unless there had been a collision as was set forth in the complaint, they were entitled to a more specific statement than that quoted as to this issue. But this sentence was immediately followed by these words: "If you find that the bus did come in collision with and strike the car in which the plaintiffs' intestates were riding, however, thereby causing it to go off the highway as alleged with consequent injuries and death of the plaintiffs' intestates, you will next consider whether it has been proven by a fair preponderance of the evidence that Price was negligent in any manner as alleged which was a proximate cause . . . of the collision and subsequent injuries and death of these plaintiffs' intestates."

These two sentences considered together, as they must be, made sufficiently clear to the jury that they could find no liability upon the defendants' part for any negligence alleged unless they first found there was a collision between the two vehicles which caused the Packard to go off the road and resulted in the injuries and death of the plaintiffs' intestates. The court did not err in charging thereon as it did.

The defendants' final claim of error as to the charge relates to the court's discussion of their claimed violation of a public utilities commission order as negligence. During the trial the plaintiffs amended their complaints by alleging as a further ground of negligence the defendants' operation of the bus having an overall width of eight feet and six inches, in violation of the commission's regulations limiting overall width to eight feet. It was undisputed that a flexible rubber fender over each of the rear wheels projected from two and one-half to three inches outside the bus body making its overall width approximately eight feet six inches, and the plaintiffs laid in evidence a regulation of the commission limiting the overall width to eight feet. However, the plaintiffs offered no evidence and made no claim that there was any contact between any part of either of these flexible fenders and the Packard car. In its charge the court referred to the allegations of the amendment, stated that a violation of the commission's regulation would have the effect of a violation of a statute, and that if such "was the proximate cause of injury to another, the person violating the statute would be liable." Then, after referring to the undisputed facts above stated concerning the rear fenders of the bus, it continued: "I do not see how you could find in this case that the violation of the statute was a proximate cause of the collision between these cars. There isn't a scintilla of

evidence in this case that those rubber fenders ever came in contact with the car in which these plaintiffs were riding." After stating that the evidence, if the jury believed it, as well as the plaintiffs' claim, was that the front part of the bus hit the Packard's rear fender, causing the collision, the court concluded: "There is no evidence tending to show that the projection of those flexible rubber fenders in any way caused this car in which these plaintiffs were riding to leave the highway. So, so far as that allegation is concerned, I do not see how you could possibly find that that was the proximate cause of the injury and death of these decedents." The defendants contend that they were entitled to have the irrelevancy of the plaintiffs' claim more clearly stated than the court did by the last quoted sentence, particularly in view of three subsequent passages in the charge leaving it to the jury to determine whether the defendants were negligent in "one or more of the respects charged." While the court might well have charged directly that the alleged violation of the commission's regulation, on the case as presented, constituted no ground of actionable negligence, this was the only fair purport and meaning of the language it did use. The subsequent portions of the charge referred to by the defendants in this connection are not significant, since in instructing the jury to determine whether the defendants were negligent in "one or more respects as alleged," the court in each instance injected that such conclusion could only be reached where that negligence was found to be a proximate cause of the accident. There was no error in the court's charge to the jury.

The remaining error assigned in each case is the court's denial of the defendants' motion to set aside the verdict for the plaintiff. The defendants' claim in this connection comes down to this, not that the record

is bare of evidence that there was a collision between the two vehicles, but that "the plaintiffs claimed, the court left it to the jury to find, and the jury did find, as proven facts, alleged occurrences which are physically impossible." This comment primarily relates to and is predicated upon the testimony of state policeman Foley, a witness called by the plaintiffs, who testified to tire marks observed by him a few minutes after the accident happened. He described them as "two marks" one, in his opinion, made by the left rear wheel of the Packard, and the other by its right rear wheel. The former was the heavier, and starting at a point two feet north of the center line of the concrete road, swung on a curve or quarter circle bowing to the southwest and extended forty-four feet in a general northwesterly direction to where it intersected the south edge of the north shoulder. The latter was the lighter and parallel to the former. Upon reaching the shoulder the marks turned to the west and continued along it one hundred and fifty feet to the tree, the right mark becoming heavier and the left fainter upon leaving the concrete. The defendants concede that the marks for one hundred and fifty feet along the shoulder were made by the Packard car, but their argument in short is that since the unquestioned overall length of the Packard was one hundred and eighty inches, it was patently a physical impossibility for it to have come onto the shoulder at considerable speed on the general northerly course shown by these marks, and there to have turned abruptly left without striking the fence at that point, and then to have proceeded along the shoulder at practically a left angle. If sustaining these verdicts necessarily involved such a finding by the jury excluding the conclusion, limited strictly and precisely to the facts so suggested by the defendants, their claim would call for more careful

consideration. This is not the situation. The sole question to be determined is, was there evidence upon which the jury could reasonably have reached the verdict which it did within the allegations of the complaint. In resolving this question the inquiry is not limited to the test of the reasonableness of a particular theory of how the accident happened which the finding, only of significance in connection with the defendants' appeal from claimed errors in the charge, may disclose as a contention of the plaintiffs at the trial.

But this aside, while Foley's was the only testimony as to tire marks on the concrete, there were many exhibits in evidence and there was the testimony of many witnesses bearing more or less directly upon how this accident happened. It was peculiarly the function of the jury to weigh all of this evidence, considering all of the probabilities, and to accept or reject these exhibits or the testimony of these witnesses either in whole or in part according to their best judgment. With this principle in mind a perusal of the evidence suggests a number of possible variations from the above recited facts propounded by the defendants, which the jury could properly have found. These, either singly or together, could well be sufficient to obviate any basis for the criticism of physical impossibility. For example, the jury may well have concluded that instead of approaching the shoulder on a "generally northerly course," the Packard at that point was headed considerably more to the west. The tracing made by Foley on cross-examination indicating the course of the marks, which is an exhibit chiefly relied upon by the defendants in this connection, was not drawn to scale and was received in evidence "to illustrate Foley's testimony only." Furthermore, his testimony that the marks were made by the rear

wheels was stated simply as his opinion. Upon such evidence the jury could logically and reasonably have found that a considerably flatter curve than the tracing portrayed and marks made in part at least by the front instead of the rear wheels, showed the turn to the left at the shoulder to have been an easier and possible one rather than the more acute left angle turn suggested by the defendants as impossible. Or again the jury may properly have concluded that the tire marks on the concrete, the only ones disputed by the defendants, were either made by a car other than the Packard, or did not exist at all, and that the collision between the vehicles occurred considerably more than two feet north of the center line of the road, causing the Packard to run off the concrete at a very slight angle where the shoulder marks began one hundred and fifty feet east of the tree. These, among other possible findings by the jury upon this issue, of themselves afford a sufficient answer to the defendants' claim.

The fundamental issue of fact before the jury for determination, as already suggested, was whether there was a contact between the vehicles which caused the accident. An abundance of evidence indicated that there was. Witnesses testified directly to it. Evidence of fresh scrape marks on the two vehicles corroborated it, and that of Price's conduct after the collision tended to support it. So also did evidence that the bus was north of the center of the road passing an overtaken car at the time, and that the impact as he was swinging his car to the right caused Drapala to lose control of it. On the other hand, bus passengers testified they noticed no contact, and Price positively denied any. There was also evidence indicating that as the bus was twenty-five feet east of the tree, proceeding on the south half of the road, there

was a crash behind it to the left, accompanied by the sound of fragments of glass striking the left side of the bus, and that, immediately after, the Packard lay wrecked in the road one hundred feet to the rear.

It was upon this conflicting evidence that the defendants claimed the accident did not result from a contact between the two vehicles, as urged by the plaintiffs, but that, instead, when the Packard went off the road and struck the fence, the bus was still several hundred feet to the west of it and first came abreast of the Packard at practically the instant when its crash against the tree occurred. By their verdict the jury resolved this issue in favor of the plaintiffs. This it was within their province to do, and the verdict, being a conclusion at which twelve honest men acting fairly and intelligently might reasonably arrive, is final and cannot be disturbed. *Porcello* v. *Finnan*, 113 Conn. 730, 733, 156 Atl. 863. The court in each case properly denied the defendants' motion to set the verdict aside.

There is no error.

In this opinion the other judges concurred.