FLORENCE FARGUET *vs.* LOUIS W. DESENTI ET AL.

Third Judicial District, Bridgeport, October Term, 1929.

WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

Argued October 27th, 1929—decided January 6th, 1930.

*Harry L. Edlin,* with whom, on the brief, was *John Henry Sheehan,* for the appellant (plaintiff).

*Stanley Dunn* and *William T. Holleran,* for the appellees (defendants).

MALTBIE, J.   The plaintiff brings this action against the owners of a tenement house to recover for injuries suffered by reason of the breaking of a rail of a veranda at the rear of the house.   There were three tenements in the house, each occupying one floor.   There was a porch running across the rear of the house on each floor and stairways led from that one on the first floor

to that on the second floor and from that on the second floor to that on the third. Access was gained to the porch on the first floor by steps leading up to it from the rear yard. These steps were located on the side of the porch parallel to the rear of the house, near one end of it. Almost directly opposite these steps was an entrance to the first floor tenement. As one mounted the steps the stairway to the upper porches was at his left, toward the center of the porch, and it inclined away from the steps. Beyond this stairway was a portion of the porch comprising about one half of it. This was not directly connected with any tenement and it is to be particularly noted that there was no door from it to the tenement on that floor. The railing ran along the side of the porch from the steps to the farther end and was divided into two sections by a post in the middle of the porch. It was the section farther from the steps which broke, causing the plaintiff's fall. She was one of the occupants of the first floor tenement. She recovered a verdict which the trial court set aside because it held that there was no evidence which could reasonably support a conclusion that the portion of the porch from which the plaintiff fell was retained by the owners of the building in their control for the common use of the occupants of the various tenements.

There was no evidence as to the terms of the leases of the various tenements of the house and it therefore became a question of fact whether the portion of the porch in question was included in the lease of any specific tenement or remained in the control of the defendants. *Vinci* v. *O'Neill*, 103 Conn. 647, 651, 131 Atl. 408. It must be borne in mind that the question whether a particular portion of the premises not included in the terms of any lease is or is not reserved by the landlord for the common use of the tenants is

essentially one of intention, and the use made of that portion of the premises is evidence of intention. Where, as in the instant case, a porch is in part used for common passageway, it does not by any means follow that only so much as is reasonably necessary for such use is deemed to be reserved by the landlord. The situation is not dissimilar from that which often exists as to the halls in an apartment house where considerable portions of them are not necessary for passageway or the use of stairs leading to other floors. A porch may be so constructed that a portion of it is not naturally or reasonably to be regarded as incident to a common use by various tenants in the building. Where such a situation exists, there may be such a use by one of them alone as indicates that the parties intended that portion of it to be annexed to the premises included in his lease. On the other hand, the mere fact that a portion of the porch is not ordinarily used in common does not necessarily mean that it is to be regarded as annexed to a particular tenement; and this is particularly true where the porch is not definitely divided into separate parts. Care should also be taken to distinguish between uses by a tenant as in his individual right and those uses which are only the exercise of such personal privileges as tenants are apt to assume even as regards portions of the premises held by the landlord for the common use of all. Where a portion of a porch is plainly reserved for a common use, and the lease is silent, another portion should not be held to be annexed to a particular tenement unless the intent of the parties to annex it appears with reasonable certainty.

There was no direct testimony upon this issue and so the question is, Was there a reasonable basis for an inference by the jury that the portion of the porch in question was not leased but remained in the control

of the defendants? There was little testimony bearing upon the use of this portion of the porch. The tenants of the first floor did use it at times apparently as a place to sit and there were also clothes lines strung at various places on the lower porch which they used. The tenant on the second floor testified that while he did use the part of the porch between the steps and the bottom of the stairway for access to his tenement he never used that beyond the stairway. As regards the clothes lines they were not limited to the portion of the porch beyond the stairway, but were run wherever was convenient upon it and their use therefore failed to indicate with any definiteness any portion of the porch as being for the sole use of the tenants of the first floor. The only other use they made of it was such as is usual as regards any common approach to a tenement house. There was lacking that clear devotion of a portion of the porch to the individual use of the tenants which was present in *Phelan* v. *Fitzpatrick,* 188 Mass. 237, 74 N. E. 326, relied upon by the defendants. On the other hand, there was testimony that the defendants had caused the railing to be put back, and while, as the trial court said, this would not constitute an admission of liability, it was proper evidence upon the issue of retention of control by them. *Vinci* v. *O'Neill, supra,* 652.

But the physical situation has an important bearing upon this issue. The portion of the porch which was between the steps and the stairway and that portion upon which the stairway stood, as well as the stairway itself, were clearly designed for the common use of the different tenants in the building, and these could not be regarded as a portion of any individual tenement. As to them only one conclusion would be possible, that the owners of the building retained control and were under a duty to use reasonable care to keep

them reasonably safe. But this duty would extend not merely to the surfaces but also to all portions of the porch necessary to give them adequate support and to such safeguards against injury as were provided in connection with them. It would therefore embrace at least the part of the railing adjacent to the stairway necessary to protect any tenants in the building having occasion to use it. It would be a reasonable inference that the defendants retained such control over the porch as was commensurate with the performance of this duty, and the jury might well have deemed it unlikely that they had included in the lease to the tenant of the first floor control over one portion of the railing while retaining to themselves control over the other. Such an inference would be strengthened by the fact that they themselves caused the railing to be repaired after it broke and the further fact that the only one of the defendants to testify gave no evidence tending to show that any portion of the porch was included in the lease of the first floor tenement. A conclusion by the jury that the defendants retained such control over the portion of the porch from which the plaintiff fell as would impose upon them the duty to use reasonable care to keep the railing which broke in a reasonably safe condition was one which they might properly reach upon the basis of the evidence in the case.

This conclusion requires that we consider the appellees' bill of exceptions. They bring before us for review the action of the trial court in admitting as an exhibit a piece of wood which it was claimed came from the portion of the rail which broke. We think there was a sufficient basis laid in the evidence for the admission of this exhibit. They also claim error in an answer given by the trial court to a question of one of the jurors when the jury came back for further

instructions. The question was: "Whether in law you always take the letter, or do you go by the spirit of the law, or must it always be the letter of the law?" The court answered: "Well, the law is elastic; we have to try to do justice. A great many times that proposition comes up as to whether we should follow the letter of the law or the spirit. I think the tendency of the court is to follow the spirit of the law. The Supreme Court, in many cases, has defined or construed statutes which, on the face of them, seem to do an injustice, and they have so construed them that they might be read as doing justice. That is about all I can say on the letter of the law." No doubt the trial court gave an answer which it would not have given had there been time for consideration. A jury is of course bound to accept and apply the principles of law governing the case before them. *State* v. *Main,* 69 Conn. 123, 134, 37 Atl. 80; *State* v. *Gannon,* 75 Conn. 206, 218, 52 Atl. 727; *State* v. *Marx,* 78 Conn. 18, 28, 60 Atl. 690. The answer given by the trial court could well have been understood by the jury as authorizing them to depart from those principles if they judged it necessary to accomplish justice in the particular case. This was error. The answer constituted the very last word of the court to the jury which, by its return for further instructions, was evidently in doubt as to the principles they should apply in reaching their verdict. It might well have been the determining element in bringing them to the verdict they reached and we cannot regard the error as harmless.

There is error and a new trial is ordered.

In this opinion the other judges concurred.