VICTORIA PETRILLO *v.* ANTONIO MAIURI ET AL.

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, Js.

Argued January 2—decided February 19, 1952

*Charles M. Lyman,* with whom was *John B. Dillon,* for the appellants (defendants Antonio and Jennie Maiuri).

*Harold B. Yudkin,* with whom was *George J. Yudkin,* for the appellee (plaintiff).

BROWN, C. J.   The plaintiff is a first-floor tenant in a four-story apartment house in Shelton.   The defendants Antonio and Jennie are owners of a joint life estate in the property and the defendant Anthony is owner of the remainder.   The plaintiff brought this action to recover for personal injuries sustained by a fall alleged to have been caused by the defendants' negligence in failing to maintain in a reasonably safe condition a concrete slab located just outside the rear entrance to her apartment.   The court rendered judgment for the plaintiff to recover of Antonio and Jennie but in favor of the defendant Anthony.   The former have appealed, and they are hereinafter referred to as the defendants.

This brief summary of the court's extensive finding, which is not subject to correction, suffices to present the further facts essential to a decision: The plaintiff's apartment, which she rented from the defendants, is at the rear of the building.   Entrance is by a doorway one step above the concrete slab, which lies along the rear wall of the building.   The slab is eight feet wide and more than twelve feet long.   There is a single apartment on each of the three upper floors.   Outside the rear door of each is a wooden porch of the same dimensions as the concrete slab.   These porches are served by connecting flights of outside stairs.   The

first flight begins on the outer part of the concrete slab, opposite the left of the plaintiff's door as one comes out. The treads of this common stairway are three and a half feet long and are set at right angles with the rear wall of the building.

The slab was used by the plaintiff and her family in common with the other tenants of the building and business and social visitors, and there was absolutely no restriction as to where the other tenants and their visitors should walk or upon the use made of the slab by them. This use included that by persons passing to and from the yard, where cars were parked; that by those going between the stairway and the building to get to an outside cellarway beyond; that by delivery-men to fill oil drums on the slab or porches; that by children of upper-floor tenants playing on the slab in the same manner as they did on the porches above; and that by those traversing a pathway which, at a point about four and a half feet from the building, led from the end of the slab near the foot of the stairway to the street. The plaintiff and her family used the slab as their only back porch for customary porch purposes, including limited storage for such articles as oil drums, in the same manner that the upper-floor tenants used their porches.

The defendants made the necessary repairs to the rear porches and stairways. After rent control first went into effect, they told the various tenants to keep these, together with the front walks and the concrete slab, clear of snow and debris. Thereafter this was done by the tenants. There was no specific agreement between the defendants and any of the tenants as to the precise extent of the premises leased to each, nor did the former give any orders with respect to the tenants' use of the concrete slab, the stairways, or the back porches. Neither the plaintiff nor other members of

her family at any time attempted to control the use of the slab. For some years it had had a cracked area about seven feet long and two feet wide. Starting two or three feet in front of the left side of the plaintiff's doorway as one comes out, this area extended past the doorway and on to the right, paralleling the rear wall of the building. The plaintiff had repeatedly asked the defendants to repair the cracked area. In passing across it on the afternoon of September 3, 1950, she twisted her right foot in a crack nineteen inches long and one and a quarter inches deep, and fell. As a result her right ankle was fractured and a gangrenous condition ensued which necessitated the amputation of the leg close to the hip. The defendants make no claim that the $22,500 awarded the plaintiff by the court for the very serious damage sustained is excessive.

The primary question for determination is whether the defendants controlled the portion of the concrete slab which encompassed the defect. *Ziulkowski* v. *Kolodziej*, 119 Conn. 230, 232, 175 A. 780. The defendants' brief concedes that they did control and so were responsible "for that part of the premises which constituted a necessary approach to the upper floors." This they would restrict, however, "to a small corner of the concrete slab perhaps four feet square" which, they contended, would afford the area necessary to enable a person descending the stairs to turn to his left into the yard or to go straight ahead onto the path leading to the street. The facts demonstrate that in no event could it be so held as a matter of law, particularly since it appears that the four-foot corridor thus defined by the defendants might well encroach upon the cracked area in question.

The plaintiff's occupancy was under an oral month-to-month lease. Since neither this nor any express agreement with the defendants defined the precise

extent of the premises leased, the question is whether there was an implied agreement as to the right of control of the concrete slab. This presents a question of fact which is essentially dependent upon the question of intention, to be determined in the light of all the significant circumstances. *Martel* v. *Malone,* 138 Conn. 385, 390, 85 A. 2d 246; *Lavoie* v. *Antupit,* 138 Conn. 422, 424, 85 A. 2d 900; *Vinci* v. *O'Neill,* 103 Conn. 647, 651, 131 A. 408; *Miller* v. *Mutual Mortgage Co.,* 112 Conn. 303, 305, 152 A. 154; *Hurlburt* v. *Sherman,* 116 Conn. 102, 105, 163 A. 603. It would serve no useful purpose to rehearse the facts pro and con bearing upon this question. The use of the slab by the plaintiff and her family as a porch and the fact that it was they and not the defendants who kept it clean constituted some evidence that control had passed to the plaintiff as tenant. On the other hand, the extensive, varied and unrestricted use made of the slab by the other tenants and their visitors alike, for the different purposes stated, without interference from the plaintiff, furnished, under all the circumstances, ample support for the conclusion that control of the slab was retained by the defendants. *Farguet* v. *DeSenti,* 110 Conn. 367, 370, 148 A. 139. What was stated in that opinion applies with equal force here: "Where, as in the instant case, a porch is in part used for common passageway, it does not by any means follow that only so much as is reasonably necessary for such use is deemed to be reserved by the landlord. The situation is not dissimilar from that which often exists as to the halls in an apartment house where considerable portions of them are not necessary for passageway or the use of stairs leading to other floors. . . . Where a portion of a porch is plainly reserved for a common use, and the lease is silent, another portion should not be held to be annexed to a particular tenement unless the

intent of the parties to annex it appears with reasonable certainty." The court did not err in reaching the conclusion that the right of control was in the defendants. The same holds true of its further essential conclusions in support of the judgment.

The complaint contained no allegation of due care on the plaintiff's part, and contributory negligence was not alleged in the defendants' answer. The court has found that at the conclusion of the trial the defendants argued for a finding of contributory negligence but that, no such defense having been pleaded, it was not considered by the court. The defendants can take nothing by the assignment of error attacking this finding. The court's memorandum of decision and its conclusions make clear that contributory negligence was not a claim considered by the court. As to the finding that the claim was first made after both sides had rested, the defendants' failure to seek a rectification of the appeal under § 365 of the 1934 Practice Book renders futile their present assignment. *Goldblatt* v. *Ferrigno*, 138 Conn. 39, 42, 82 A. 2d 152. Since the record shows that the defendants' claim of contributory negligence was neither ruled upon nor decided by the court adversely to their contention, we are not bound to consider any error alleged upon this ground. Practice Book, 1951, § 409.

To make clear, however, that justification for the court's refusal to consider contributory negligence as an issue rests upon no mere technicality, we discuss briefly the claim urged in the defendants' brief that the defense of contributory negligence was available to them though not pleaded. Section 7836 of the General Statutes provides that in any action to recover damages for negligently causing personal injury it shall be presumed that the person who was injured was in the exercise of reasonable care. The statute then con-

tinues: "If contributory negligence be relied upon as a defense, it shall be affirmatively pleaded by the defendant or defendants, and the burden of proving such contributory negligence shall rest upon the defendant or defendants." The statute is clear and means just what it says. It is declaratory of the procedural rights of a plaintiff. He may waive these rights by alleging in his complaint his own due care. *Hatch* v. *Merigold,* 119 Conn. 339, 343, 176 A. 266; *Colligan* v. *Reilly,* 129 Conn. 26, 28, 26 A. 2d 231. Except where this is the situation, no valid defense of contributory negligence is available to a defendant under the statute unless he complies with both of the requirements in the sentence quoted. *Malone* v. *Santora,* 135 Conn. 286, 293, 64 A. 2d 51; *Meglio* v. *Comeau,* 137 Conn. 551, 553, 79 A. 2d 187. First, he must affirmatively plead it, and, second, he must sustain the burden of proving it. Failure to meet the first requirement renders contributory negligence unavailable as a defense. Failure to meet the second renders the defense unavailing. As we said in the *Hatch* case, supra, "The provisions of the statute are not severable, but all its terms are intended to carry out one purpose, to place the duty of pleading and proving contributory negligence upon the defendant." In the instant case, the defendants' failure to plead contributory negligence fully warranted the plaintiff in presenting her case without regard to that issue. Manifestly, it would have been most unfair if the court had sustained the defendants' claim, made for the first time after the evidence was concluded.

The case of *Toletti* v. *Bidizcki,* 118 Conn. 531, 537, 173 A. 223, relied upon by the defendants as supporting their contention that the defense of contributory negligence "was legally available without having been

pleaded," in so far as it is in conflict with the principles above stated is overruled. In *LeBlanc* v. *Grillo,* 129 Conn. 378, 385, 28 A. 2d 127, the other case cited by the defendants in this connection, contributory negligence was put in issue by the plaintiff's denial of the defendants' affirmative defense. A-176 Rec. & Briefs 424-425. The case is inapplicable in the present instance, where the pleadings presented no issue of contributory negligence. The court did not err in disregarding the defendants' claim of the defense of contributory negligence.

There is no error.

In this opinion the other judges concurred.