RICHARD JUCHNIEWICZ, EXECUTOR (ESTATE OF
PATRICIA JUCHNIEWICZ), ET AL. *v.*
BRIDGEPORT HOSPITAL ET AL.
(SC 17345)

Borden, Norcott, Katz, Palmer and Vertefeuille, Js.

---

Argued September 5, 2006—officially released January 9, 2007

*Carey B. Reilly,* with whom on the brief was *Cynthia C. Bott* for the appellant (named plaintiff).

*Kevin M. Tepas,* for the appellees (defendants).

*Opinion*

BORDEN, J. The dispositive issue in this certified appeal is whether the Appellate Court properly concluded that the named plaintiff was not entitled to a jury charge, pursuant to General Statutes § 52-114, that the named plaintiff's decedent was presumed to be in the exercise of reasonable care.[1] We answer that question in the affirmative and, accordingly, we affirm the judgment of the Appellate Court.

The named plaintiff, Richard Juchniewicz, executor of the estate of his deceased wife, Patricia Juchniewicz, brought this wrongful death action against the defendant physician, Frank Spano.[2] After a jury verdict in favor of the defendant, the plaintiff appealed to the Appellate Court. The Appellate Court affirmed the judgment of the trial court. *Juchniewicz* v. *Bridgeport Hospital*, 86 Conn. App. 310, 311, 860 A.2d 1275 (2004). This certified appeal followed.[3]

---

[1] General Statutes § 52-114 provides: "In any action to recover damages for negligently causing the death of a person, or for negligently causing personal injury or property damage, it shall be presumed that such person whose death was caused or who was injured or who suffered property damage was, at the time of the commission of the alleged negligent act or acts, in the exercise of reasonable care. If contributory negligence is relied upon as a defense, it shall be affirmatively pleaded by the defendant or defendants, and the burden of proving such contributory negligence shall rest upon the defendant or defendants."

[2] The initial complaint also included claims by both the named plaintiff and William Juchniewicz, the son of the decedent, individually, against the . . . defendant, Bridgeport Hospital. Those claims were later withdrawn. Therefore, Spano is the sole defendant on appeal. Hereafter, references in this opinion to the plaintiff are to Richard Juchniewicz, and references to the defendant are to Spano.

[3] We granted the plaintiff's petition for certification to appeal limited to the following issues: "1. Did the Appellate Court properly conclude that the . . . plaintiff was not entitled to a jury charge that the plaintiff's decedent was presumed to be in the exercise of reasonable care, pursuant to General Statutes § 52-114?

"2. If the answer to the first question is 'no,' was the error harmful?" *Juchniewicz* v. *Bridgeport Hospital*, 272 Conn. 917, 866 A.2d 1287 (2005).

The plaintiff claims that: (1) the Appellate Court improperly interpreted the statutory presumption set forth in § 52-114 as proper for the jury to consider only in cases in which a defendant pleads contributory negligence as a special defense;[4] and (2) the trial court should have charged the jury with the statutory presumption because the defendant, through his evidence and arguments, constructively injected the contributory negligence special defense. We disagree.

As set forth in the opinion of the Appellate Court, the jury reasonably could have found the following facts. "On Friday, December 8, 1995, while employed as a nurse at Bridgeport Hospital, the plaintiff's decedent became sick with a fever and chills. Because her regular physician was unavailable, she telephoned the defendant. After learning her symptoms, the defendant instructed the plaintiff's decedent either to come to his office or to go to the emergency room at Bridgeport Hospital. The plaintiff's decedent went to the emergency room and was examined by John Woods, a physician's assistant. During the examination, the plaintiff's decedent complained of a fever and chills, but did not mention any other specific symptoms. After the examination, Woods telephoned the defendant and informed him that the plaintiff's decedent had a 102.5 degree temperature and chills. At that time, the defendant diagnosed the plaintiff's decedent with a viral infection. The plaintiff's decedent was sent home and instructed to take Tylenol and to update the defendant during the weekend.

"Later that evening, the plaintiff's decedent began vomiting and was experiencing pain in her right shoulder. She called her work unit at Bridgeport Hospital

---

[4] Although Connecticut has adopted the doctrine of comparative negligence; see General Statutes § 52-572h (b); our statutes retain the term "contributory negligence." See, e.g., General Statutes §§ 52-114 and 52-572h (b).

and was prescribed Roxicet, a pain reliever, by Wittaya Ruan, an anesthesiologist with whom she worked. After waking up on Saturday, December 9, 1995, the plaintiff's decedent telephoned the defendant, and informed him that her fever was 101.5 degrees and that she was nauseous and vomiting. During the conversation, the plaintiff's decedent also told the defendant that she had pain in her shoulder and that an orthopedic surgeon, who was treating her shoulder, had prescribed Roxicet to control the pain. The defendant recommended she stop taking the Roxicet because it potentially causes nausea, and suggested that she take Motrin and apply ice to relieve her shoulder pain.

"The plaintiff's decedent called the defendant again on Sunday, December 10, 1995, and, in addition to reporting that she was experiencing a continuing fever, nausea and vomiting, reported that she had diarrhea. In response, the defendant prescribed another pain reliever and a suppository for nausea. The plaintiff's decedent woke up early on Monday, December 11, 1995, and was rushed to the Bridgeport Hospital emergency room. Several hours later, at 5:55 a.m., she died from an untreated bacterial infection that caused her to suffer toxic shock syndrome.

"In January, 1998, the plaintiff brought a negligence action against the defendant and Bridgeport Hospital. A jury trial commenced in November, 2002. Before and during the trial, the plaintiff claimed that the defendant was inappropriately arguing that the plaintiff's decedent had been contributorily negligent, without having affirmatively pleaded contributory negligence.[5] Initially, the plaintiff made an oral motion in limine to preclude the defendant from introducing any evidence of negligence of the plaintiff's decedent. The court denied the

---

[5] "The defendant did not plead any special defenses in his answer." *Juchniewicz* v. *Bridgeport Hospital,* supra, 86 Conn. App. 313 n.2.

motion. After the close of evidence, the court held a charging conference in which the plaintiff requested that the court 'charge out' contributory negligence.[6] The court denied the request and did not charge the jury on contributory negligence. After the jury instructions were given, the plaintiff again requested that the court charge the jury that the plaintiff's decedent is presumed, pursuant to . . . § 52-114, to have been in the exercise of reasonable care. The court again denied the plaintiff's requested charge. The plaintiff next filed a motion regarding contributory negligence, asking the court either to instruct the jury on the presumption regarding the exercise of due care of the plaintiff's decedent or, in the alternative, to allow the defendant to amend his answer to claim that the plaintiff's decedent had been contributorily negligent. The court denied the motion. After the jury returned a verdict in favor of the defendant, the plaintiff filed a motion to set aside the verdict, which the court denied." Id., 311–14.

In his appeal to the Appellate Court, the plaintiff claimed that the trial court improperly failed to instruct the jury that the plaintiff was entitled to a presumption, pursuant to § 52-114, that the plaintiff's decedent was acting in the exercise of reasonable care. Id., 314. The Appellate Court rejected the plaintiff's claim and affirmed the judgment of the trial court. Id., 316.

The plaintiff first claims that the Appellate Court improperly rejected his claim that he was entitled to a jury instruction, in accord with the statutory presumption embodied in § 52-114, that the plaintiff's decedent

---

[6] "The plaintiff submitted the following request to charge: 'I instruct you that there has been no claim made by the [d]efendant in this case that [the decedent] was herself negligent. Therefore, I instruct you as a matter of law that that she was not negligent and you are not to consider whether or not she was personally responsible for what occurred. [General Statutes] § 52-114.'" *Juchniewicz* v. *Bridgeport Hospital,* supra, 86 Conn. App. 313 n.3.

was presumed to be in the exercise of reasonable care. We conclude, to the contrary, that the purpose and effect of § 52-114 are to shift the burden of proof on the issue of the plaintiff's contributory negligence from the plaintiff, upon whom it rested under the common law, to the defendant, and that the statute does not entitle the plaintiff to a jury charge that his decedent was presumed to be in the exercise of ordinary care.

Because the plaintiff's claim involves the interpretation of § 52-114, our scope of review is plenary. *Old Farms Associates* v. *Commissioner of Revenue Services*, 279 Conn. 465, 480, 903 A.2d 152 (2006). "Although our legislature recently has enacted General Statutes § 1-2z, precluding resort to extratextual sources when the statute is plain and unambiguous, in the present case, neither of the parties claims that [§ 52-114] yield[s] a plain and unambiguous answer," to the question of whether the plaintiff was entitled to a jury charge that the plaintiff's decedent was presumed to be in the exercise of reasonable care. Id. "Accordingly, our analysis is not limited, and we, therefore, apply our well established process of statutory interpretation, under which we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) Id., 480–81.

We begin our analysis with the language of the statute. In its entirety, § 52-114 provides: "In any action to recover damages for negligently causing the death of a person, or for negligently causing personal injury or

property damage, it shall be presumed that such person whose death was caused or who was injured or who suffered property damage was, at the time of the commission of the alleged negligent act or acts, in the exercise of reasonable care. If contributory negligence is relied upon as a defense, it shall be affirmatively pleaded by the defendant or defendants, and the burden of proving such contributory negligence shall rest upon the defendant or defendants." The plaintiff relies primarily on the first sentence of the statute, namely, that "it shall be presumed that [the decedent] . . . was, at the time of the commission of the alleged negligent act . . . in the exercise of reasonable care." General Statutes § 52-114. In analyzing this language, however, we do not write on a clean slate. Its history and the case law interpreting it make clear that the statute does not mean that the jury instruction sought by the plaintiff in the present case should be given.

Prior to 1931, the common law imposed upon all plaintiffs, as part of the burden of proving their case, the obligation of proving their own freedom from contributory negligence. See, e.g., *Mullen* v. *Mohican Co.*, 97 Conn. 97, 100, 115 A. 685 (1921). At that time, any contributory negligence on the part of a plaintiff would serve as an absolute bar to his or her recovery. See *Hatch* v. *Merigold*, 119 Conn. 339, 341, 176 A. 266 (1935); see also footnote 4 of this opinion. The plaintiff's burden of proving the absence of negligence on his or her decedent's part proved practically impossible to overcome in a wrongful death action, in which the defendant was free to testify on his behalf but the decedent was deceased and, therefore, unable to offer any evidence of his or her exercise of ordinary care. "The person who has been killed in an automobile accident cannot, of course, give testimony as to the circumstances leading up to it. But the driver who has killed him, if he survives, can. The facts of the accident, in the absence

of other eyewitnesses, are peculiarly within the latter's knowledge and power to bring before the court." *Hatch* v. *Merigold*, supra, 342.

Such facts gave rise to the case of *Kotler* v. *Lalley*, 112 Conn. 86, 88, 151 A. 433 (1930), which involved a hit and run accident that resulted in death. In an action brought by the decedent's executor, the trial court granted the defendant's motion for nonsuit, concluding that "giving the most favorable construction to the plaintiff's evidence, it failed to show . . . *reasonable care on the part of the decedent.*" (Emphasis added.) Id., 87. On appeal, this court agreed, concluding that, although the jury reasonably could have found the defendant negligent; id., 87–88; in the absence "of any fact rendering it probable or improbable that the decedent exercised due care . . . the plaintiff's proof was fatally defective . . . ." Id., 90.

The majority in *Kotler* considered the court bound by the common-law rule that a plaintiff bore the burden of proving that his or her decedent was not contributorily negligent. "In some [states] it is said that where there is no obtainable evidence as to due care on the part of the injured party by reason of his death, a presumption of due care is raised from the natural instinct of self-preservation, and the reason for the rule is said to lie in the injustice of the common-law rule . . . . [W]e have no statutory provision . . . to enforce the obviously just requirement that the burden of proof in this particular class of cases, be put in effect upon the defendant." (Citations omitted.) Id., 89–90. The dissent stated: "To permit the 'hit and run driver,' under the circumstances present in this case, to escape civil liability for his wrong because the dead cannot speak is to give him the protection of a rule of law, that the plaintiff to recover must prove that the decedent's own negligence did not materially contribute to her death, which his own conduct has made inapplicable, and a rule which

in any relation of life under like circumstances would be repudiated as unjust and inhuman." Id., 100 (*Wheeler, C. J.,* dissenting).[7]

In 1931, our legislature enacted the predecessor to § 52-114, General Statutes (Cum. Sup. 1931) § 598a.[8] "This statute . . . was undoubtedly the result of our decision in *Kotler* v. *Lalley,* [supra, 112 Conn. 86]." *Voronelis* v. *White Line Bus Corp.,* 123 Conn. 25, 28, 192 A. 265 (1937). At that time, the statute was confined to cases in which the plaintiff had died prior to trial, unless the *defendant* had died as a result of his negligent conduct. See footnote 8 of this opinion. In 1939, however, the legislature significantly broadened the statute, so that it now applies to all negligence cases in which the plaintiff claims personal injury or property damage, irrespective of whether the plaintiff has died before trial, and irrespective of whether the defendant also died as a result of his own negligence. See General Statutes (Sup. 1939) § 1399e; see also footnote 1 of this opinion. Therefore, § 52-114, although initially enacted as a response to *Kotler* so as to level the playing field

---

[7] The dissent also rejected the notion that the common law prevented the court from overturning what even the majority agreed was an unjust rule: "I cannot agree that this court cannot change the rule of procedure it has itself adopted . . . because of its adherence to the precedent of its admittedly bad rule. . . . The law of torts is in the main judge-made law. . . . The common law, which is the governing force of our life, is the product of slow and measured growth." (Citation omitted.) *Kotler* v. *Lalley,* supra, 112 Conn. 102–103 (*Wheeler, C. J.,* dissenting).

[8] General Statutes (Cum. Sup. 1931) § 598a provided: "In any action to recover damages for negligently causing the death of a person, or for negligently causing injury to a person, if the person who sustained the injury shall die prior to the trial of such action, it shall be presumed that such person was, at the time of the commission of the alleged negligent act or acts, in the exercise of reasonable care. If contributory negligence be relied upon as a defense, it shall be affirmatively pleaded by the defendant, and the burden of proving such contributory negligence shall rest upon the defendant. The provisions of this section shall not apply when the person or persons charged with the negligence shall die as a result of said act or acts."

when the injured party had died, is now a statute of general applicability to all negligence actions.

Presumptions are not fungible. To acknowledge that there is a legal presumption does not answer the question posed by the present case, namely, whether the statutory presumption at issue required a jury instruction embodying the presumption. In any case, whether such an instruction is required depends on the purpose of the presumption involved.

As our case law indicates, as to common-law presumptions, "[n]o general rule can . . . be laid down as to the effect of a particular presumption in the actual trial of a case, for this depends upon the purpose it is designed to serve." *O'Dea* v. *Amodeo*, 118 Conn. 58, 60, 170 A. 486 (1934). Thus, for example, there are presumptions, such as the presumption of innocence in a criminal case, which "merely emphasizes the burden which rests upon the [s]tate to prove the accused guilty," that operate whether the defendant produces evidence or not; id.; presumptions, of convenience, common experience or probability, that operate only until the defendant produces substantial countervailing evidence; id., 61–63; and presumptions, arising out of a party's peculiar knowledge, that operate to cast upon the party with that knowledge not only the burden of producing substantial countervailing evidence, but of proving the fact at issue. Id., 63. Some presumptions may require a jury instruction explaining them; others may not.

"A presumption established by statute may fall into one or the other of these categories, or the language used may clearly indicate the effect which it is intended to have." Id., 64. Thus, General Statutes (Cum. Sup. 1933) § 1149b, the pre-1939 version of § 52-114, which applied only when the decedent had died before trial, "creates a presumption that one killed by the negligent

operation of a motor vehicle was in the exercise of reasonable care and then proceeds definitely to place the burden to plead and prove contributory negligence upon the defendant." Id.

We have said that "[t]he provisions of [§ 52-114] are not severable, but all its terms are intended . . . to place the duty of pleading and proving contributory negligence upon the defendant." *Hatch* v. *Merigold*, supra, 119 Conn. 343; see also *Baraglia* v. *Brilhart*, 134 Conn. 690, 692–93, 60 A.2d 504 (1948). Section 52-114 "made no change in the substantive law. . . . Its effect . . . is to shift the burden of proving freedom from contributory negligence from the plaintiff, where it rested under the common law . . . and to place the burden of proving contributory negligence upon the defendant *if the latter sees fit to claim it by pleading it.*" (Citations omitted; emphasis added.) *LeBlanc* v. *Grillo*, 129 Conn. 378, 385, 28 A.2d 127 (1942). It is a procedural statute. Id.; see *Petrillo* v. *Maiuri*, 138 Conn. 557, 563, 86 A.2d 869 (1952); *Hatch* v. *Merigold*, supra, 342; *Toletti* v. *Bidizcki*, 118 Conn. 531, 537, 173 A. 223 (1934).

The question of whether a plaintiff was negligent is not at issue in a case unless the defendant relies on the plaintiff's alleged negligence by pleading it as a special defense. *LeBlanc* v. *Grillo*, supra, 129 Conn. 384–85. Indeed, in *LeBlanc*, we held that it was inappropriate for the trial judge, in refusing to set aside the verdict in favor of the plaintiff, to rely on the statute's stated presumption of the decedent's reasonable care. Id., 386. We said: "The rule still obtains that a plaintiff seeking damages allegedly caused by the negligent act of another will not be permitted to recover if it appears that his own wrongful conduct was a proximate cause of the injury to his person or damage to his property of which he complains. . . . *The statute applies, as its predecessor applied, only to contributory negligence,*

*and the presumption that a plaintiff is free therefrom conferred by it is without effect upon the burden always assumed by a plaintiff alleging negligence on the part of a defendant to establish it. . . .* The presumption created in the statute . . . does not affect the obligation of a plaintiff in an action of negligence to sustain the burden of establishing negligence on the defendant's part and that the conduct complained of was a proximate cause of the injury to person or damage to property for which he seeks recovery. . . . *[I]t is without probative effect within the limited scope of its operation. Presumptions of such character possess no probative quality.*" (Citations omitted; emphasis added.) Id., 385–86. Thus, the presumption stated in the first sentence of § 52-114 is without probative force, functioning merely to place the burden of proof on the question of the plaintiff's contributory negligence, if placed in issue, upon the defendant.

This is not to say that the first sentence of § 52-114 is superfluous. Understood, however, as a response to the common-law rule criticized by the dissent in *Kotler*, its effect is, in every case, to relieve the plaintiff of the burden, as a prerequisite to recovery, of proving his or her freedom from contributory negligence. The first sentence of § 52-114 makes clear that the plaintiff "is under no obligation to offer evidence as to his decedent's freedom from contributory negligence . . . ." *Hatch* v. *Merigold*, supra, 119 Conn. 341. The first sentence of § 52-114 does not, however, entitle the plaintiff to a jury instruction embodying the notion that the plaintiff is presumed to be in the exercise of due care.

The cases in which we have considered the propriety of a jury charge under § 52-114 support this conclusion. In *LeCount* v. *Farrand*, 118 Conn. 210, 212, 171 A. 623 (1934), the plaintiff claimed "that the charge of the court did not give him the full benefit of the presumption that the decedent was in the exercise of due care . . . ."

We concluded, however, that the charge, which stated "that the burden was upon the defendants to prove the negligence of the plaintiff's decedent," was sufficient. Id., 213; accord *Piascik* v. *Railway Express Agency, Inc.*, 119 Conn. 277, 278, 175 A. 919 (1934). In *Voronelis* v. *White Line Bus Corp.*, supra, 123 Conn. 28, we said about the statute that "a trial court need not specifically refer to it or charge in terms that there is a presumption that the deceased was in the exercise of due care, if it makes clear that the effect of the statute is that which we have stated."

Ten years later, we again faced the issue of whether it is appropriate to instruct the jury specifically, with the language of the first sentence of § 52-114, that a plaintiff is presumed to be in the exercise of due care. *Marley* v. *New England Transportation Co.*, 133 Conn. 586, 589–90, 53 A.2d 296 (1947). The defendant in *Marley* had pleaded contributory negligence, and the trial court included in its charge the language of the first sentence of § 52-114. Id., 589. On appeal, the defendant argued that by reading the statute, the court gave probative effect to the presumption, "that the jury could only get the idea that there is something in addition to the evidence from which they should decide the question of contributory negligence." Id. Although persuaded that the charge, in its entirety, sufficiently explained the meaning of § 52-114, we reiterated that "every purpose of the statute is served if . . . *the court does not read it to the jury but merely charges them that the burden of proving contributory negligence is upon the defendant* . . . ." (Emphasis added.) Id., 590. Moreover, "[i]t would make for simplicity in the charge and remove any possibility of confusing the jury if this practice were followed." Id.; see *Grebloski* v. *Faux*, 151 Conn. 712, 713, 200 A.2d 486 (1964).

These cases stand for the proposition that the appropriate method for conveying the effect of § 52-114 to a

jury is to articulate the burdens that the statute imposes upon the parties. Those burdens are that the plaintiff must prove the defendant's negligence, and the defendant must prove the plaintiff's contributory negligence if the defendant has pleaded it.

We are not persuaded by the plaintiff's argument that these cases are inapposite because in each case the defendant had pleaded contributory negligence. Because the jury charges in these cases included instructions on the elements of contributory negligence as well as the defendant's burden of proof, the plaintiff contends, there was no need, as there is in the present case, to "[level] the playing field" by charging on the specific language of the first sentence of § 52-114. By use of the phrase "[level] the playing field," the plaintiff refers to the original purpose of the predecessor to § 52-114, which we discussed previously in this opinion, namely, to relieve plaintiffs in wrongful death actions of the almost insurmountable obligation of proving their decedent's exercise of ordinary care. As previously discussed, however, § 52-114 already served to level the playing field in the present case, because the plaintiff did not bear the burden of proving his decedent's freedom from contributory negligence. Prior to 1931, it would have been appropriate for the trial court to instruct the jury that to win his case the plaintiff must prove both that the defendant was negligent and that the decedent was not negligent. The trial court gave no such instruction, and that fact alone gives sufficient effect to the first sentence of § 52-114.

We are also unpersuaded by the plaintiff's argument that our reading of § 52-114 "gives the litigant-defendant control over the issue of contributory negligence and who has the burden of proving it," because "evidence of [the plaintiff's] decedent's conduct may be used against him at trial, without explanation or instruction, even though contributory negligence has not been pleaded."

In a case such as the present one, in which the defendant's alleged negligence was based entirely on his responses to the plaintiff's decedent's reports of her symptoms to him, charging the jury with the language of the first sentence of § 52-114 would have resulted in the opposite extreme. It would have afforded the plaintiff control over the issue of contributory negligence, constructively imposing upon the defendant the burden of proving a special defense that he had not pleaded. See *Marley* v. *New England Transportation Co.*, supra, 133 Conn. 589–90 (expressing concern over confusion caused by charge on language of presumption even when defendant pleads contributory negligence).

The plaintiff also claims that, even if, in general, the statutory presumption applies only to cases in which the defendant has pleaded contributory negligence, in the present case the defendant in effect used the defense of contributory negligence without pleading it because, through his evidence and arguments, he placed the blame for the decedent's death on her and her conduct. In support, the plaintiff points to the following evidence and arguments of the defendant. In his opening statement, counsel for the defendant told the jury that the decedent improperly obtained prescription pain medication and that she misrepresented to the defendant the source of that medication. During the presentation of evidence, the defendant stated that the decedent initially failed to tell him about her shoulder pain and that she later misled him to believe that she was being treated by an orthopedist. Through his expert witness, the defendant also presented evidence on the decedent's failure accurately to describe her symptoms. The expert testified that the decedent mistakenly assumed that exercise had caused her shoulder pain. In his closing argument, the defendant's attorney said the decedent "made the mistake of misinterpreting or misunderstanding what was going on with her shoul-

der," adding, "I don't blame her for that." In conclusion, he said: "There was a bacterial infection . . . . The one thing that would have perhaps pointed [the defendant] toward that was the shoulder pain, and [the decedent] innocently and mistakenly . . . pointed him away from that symptom." We reject this claim of the plaintiff.

The plaintiff had the burden of proving the defendant's negligence. By the same token, the defendant had the right to deny that his conduct was negligent. In the present case, the evidence of the various telephone conversations between the decedent and the defendant legitimately served as the basis for the defendant's claim that the defendant was not negligent because the decedent gave him inaccurate or incomplete information. The fact that the defendant's claim that he was not negligent was based on the decedent's conduct in relating her symptoms to him is simply insufficient to give rise to a requirement that the court give a jury instruction embodying the language of the first sentence of § 52-114.

The defendant was entitled, in his denial of negligence, to rely on that evidence as establishing his freedom from negligence, and the trial court was correct in declining to charge the jury as requested by the plaintiff. Indeed, to conclude otherwise in accordance with the plaintiff's claim would be to afford the entire statute an effect that it was not intended to have, namely, a probative force rather than merely to place the burden of proof of the plaintiff's contributory negligence upon a defendant who has pleaded it.

We disagree with the plaintiff that, in a case such as this one, evidence of the plaintiff's conduct may be used against him "without explanation or instruction . . . ." Because the plaintiff's contributory negligence is not at issue unless and until the defendant pleads contributory negligence; see, e.g., *Telesco* v. *Telesco*, 187 Conn. 715,

720, 447 A.2d 752 (1982); a similarly situated plaintiff may use the rules of evidence, particularly those governing relevance, to prevent the misuse of testimony or inappropriate arguments. See, e.g., *Delott* v. *Roraback*, 179 Conn. 406, 414, 426 A.2d 791 (1980) (defendant's failure to plead contributory negligence "preclude[s] any inquiry on her part into antecedent acts of negligence by the plaintiff").[9] That does not mean, however, that simply because the evidence may support the defendant's claim of his own due care based upon the decedent's conveyance to him of inaccurate or incomplete information, the plaintiff was entitled to a jury instruction on the presumption of the decedent's due care.

The judgment of the Appellate Court is affirmed.

In this opinion PALMER and VERTEFEUILLE, Js., concurred.

KATZ, J., with whom, NORCOTT, J., joins, concurring. I agree with the majority opinion's conclusion that, based on our prior case law, General Statutes § 52-114 does not provide the named plaintiff, Richard Juchniewicz, the executor of the estate of his deceased wife, Patricia Juchniewicz (decedent),[1] with the substantive

---

[9] We are mindful that the plaintiff made other arguments in the Appellate Court. See *Juchniewicz* v. *Bridgeport Hospital*, supra, 86 Conn. App. 316–23. Specifically, the plaintiff argued that the trial court: (1) "improperly failed to require the defendant to amend his answer to plead contributory negligence and that the court improperly failed to charge the jury on contributory negligence"; id., 316; and (2) "improperly denied [the plaintiff's] motion in limine to preclude . . . any evidence of the contributory negligence of the plaintiff's decedent." Id., 321. In his petition for certification to appeal to this court, the plaintiff requested that we entertain these issues as well. Because we limited our grant of certification to the propriety of a charge on the language of § 52-114; see footnote 3 of this opinion; these issues are not before us and we do not consider them.

[1] See footnote 2 of the majority opinion for a listing of the parties originally involved in this action. Hereafter, references in this opinion to the plaintiff are to Richard Juchniewicz.

right to a jury instruction that his decedent was presumed to have acted in the exercise of reasonable care, and that "the statutory presumption applies only to cases in which the defendant has pleaded contributory negligence . . . ." Additionally, I recognize that the defendant Frank Spano (defendant) never pleaded contributory negligence. The plaintiff, however, had asked the trial court to require the defendant to plead contributory negligence in light of the evidence, but the trial court refused to instruct the defendant to amend his pleadings, and the Appellate Court affirmed the judgment, concluding that the trial court's decision was not an abuse of discretion. *Juchniewicz* v. *Bridgeport Hospital*, 86 Conn. App. 310, 321, 860 A.2d 1275 (2004). We thereafter granted the plaintiff's petition for certification to appeal limited to the issue addressed in the majority opinion, that is, whether the plaintiff was entitled to a jury charge that the plaintiff's decedent was presumed to have acted in the exercise of reasonable care, pursuant to § 52-114. *Juchniewicz* v. *Bridgeport Hospital*, 272 Conn. 917, 866 A.2d 1287 (2005). We declined, however, to grant the plaintiff's petition for certification as to its second question, that is, whether the Appellate Court improperly concluded that the trial court had acted properly when it refused to require the defendant to formally plead the defense of contributory negligence. I am now convinced that we made a mistake by failing to certify the second issue, because I do not think the issues are divisible from one another under the facts of this case.

During the course of the trial, the defendant refuted the allegations of his negligence by relying on the limited information that he had been given by the decedent. That information, however, could have demonstrated not simply that the defendant had acted reasonably based on the information the decedent had given him, but, if credited, also suggested that the decedent had

acted negligently, thus contributing to her own demise, by failing to convey information or conveying inaccurate information. In fact, in his memorandum in opposition to the plaintiff's petition for certification, although the defendant claimed that his defense at trial was, in large part, that some of the plaintiff's evidence regarding the decedent's symptoms, such as chills and shoulder pain, had not been truthful, the defendant acknowledged that such evidence could have had some bearing on the issue of the decedent's own negligence. Specifically, at trial, the plaintiff presented evidence that his decedent had experienced severe chills, which the plaintiff's experts characterized as "rigors" and relied on in determining that the defendant negligently had failed to take certain measures. Although the defendant contended at trial that the decedent never had chills of such a serious nature, he also asserted that she had failed to communicate to him that she had chills of such a serious nature, or more specifically, "that they were rigors, if she [knew] what the word 'rigors' meant." Mindful that the decedent was an emergency room nurse, the jury could have considered negligent the decedent's failure to recognize her symptoms as a sign of something dangerous. Indeed, in his opposition to the plaintiff's petition for certification, the defendant asserted that "it may arguably have been negligent to fail to mention rigors i[f] they had occurred . . . ."

Additionally, there was evidence that the decedent had thought that her shoulder pain was due to an injury that predated the illness for which she had contacted the defendant. Again, the defendant notes in his opposition to the plaintiff's petition for certification that, "whether [the] plaintiff's decedent thought that the illness was separate from the shoulder injury could not be construed as contributory negligence *unless the decedent herself was a physician.*" (Emphasis added.)

As we know, however, the decedent was an emergency room nurse, someone who had medical training and who consequently could have been held to a higher standard by the jury.

The defendant further claimed in his opposition to the plaintiff's petition for certification that, because the only evidence of the decedent's chills had come from the plaintiff, the jury, as evidenced by its verdict, must have found the evidence to be not credible. That is arguably one scenario that the jury could have accepted; it also, however, could have believed the plaintiff's testimony that the decedent had had these symptoms, but also believed the defendant's testimony that the decedent had failed to relate these symptoms to him. Had that been the case, the jury would have been left with the clear impression that the decedent's own negligence had contributed to her death. Therein lies the problem; because the defendant had not been required to plead contributory negligence, the statutory presumption of due care under § 52-114 did not apply, and the jury was not given an instruction that the decedent's negligence would not bar her recovery provided that her negligence was not greater than the defendant's negligence. See General Statutes § 52-572h (b) (contributory negligence rule).

Accordingly, I would reconsider our denial of the plaintiff's petition for certification as to the question of whether the Appellate Court properly concluded that the trial court had not abused its discretion in declining to require the defendant to amend his pleadings to include a defense of contributory negligence and would allow the parties to file supplemental briefs on that issue. In the absence of briefs on the additional issue we did not certify, I must concur separately.